IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

STATE OF TEXAS, *et al.,*

                                  Plaintiffs,

   *versus*

UNITED STATES OF AMERICA, *et al.,*

                       Defendants.

**CIVIL ACTION NO. 7:16-cv-00054-O**

**BRIEF *AMICI CURIAE* OF AMERICAN CIVIL LIBERTIES UNION FOUNDATION, AMERICAN CIVIL LIBERTIES UNION OF TEXAS, GLBTQ LEGAL ADVOCATES & DEFENDERS, LAMBDA LEGAL DEFENSE AND EDUCATION FUND, INC., NATIONAL CENTER FOR LESBIAN RIGHTS, AND TRANSGENDER LAW CENTER IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND IN SUPPORT OF DEFENDANTS**

Kenneth D. Upton, Jr.
Texas State Bar No. 00797972
Paul D. Castillo
Texas State Bar No. 24049461
LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
3500 Oak Lawn Avenue, Suite 500
Dallas, Texas 75219-6722
Telephone:  (214) 219-8585
Facsimile:  (214) 219-4455
kupton@lambdalegal.org
pcastillo@lambdalegal.org

COUNSEL OF RECORD
FOR *AMICI CURIAE*

July 27, 2016

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

INTEREST OF AMICI CURIAE ...........................................................................3

    I.      American Civil Liberties Union Foundation and
           American Civil Liberties Union of Texas ................................... 4

    II.     GLBTQ Legal Advocates & Defenders ..................................... 4

    III.   Lambda Legal Defense and Education Fund, Inc. .................... 5

    IV.   National Center for Lesbian Rights ........................................ 5

    V.    Transgender Law Center ......................................................... 6

ARGUMENT ...........................................................................................................7

    I.      This Court Should Deny Plaintiffs' Request for a
           Nationwide Preliminary Injunction Because
           Plaintiffs Have Not Identified the Conduct They
           Seek to Enjoin ............................................................................ 7

    II.     The Court Should Reject Plaintiffs' Request for a
           Nationwide Injunction Because It Would Interfere
           with the Development of Legal Precedent and
           Could Adversely Affect Legal Proceedings Involving
           Individuals Not Before This Court. ....................................... 10

    III.   This Court Should Not Issue A Nationwide – Or
           Any – Injunction When Plaintiffs Have Forum
           Shopped .................................................................................... 13

CONCLUSION .....................................................................................................19

CERTIFICATE OF SERVICE ............................................................................20

APPENDIX OF KEY CASES ......................................................................... A-1

APPENDIX OF ORGANIZATIONAL COUNSEL ...................................... A-2

i

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*1-Stop Fin. Serv. Ctrs. of Am., LLC v. Astonish Results, LLC,*
No. A-13-CA-961-SS, 2014 U.S. Dist. LEXIS 8117, at *12
(W.D. Tex. Jan. 23, 2014) ..................................................................... 13

*A.W. v. Kenosha Unified School District No. 1 Board of Education,*
No. 2:16-cv-943 (E.D. Wis. filed July 19, 2016) ................................... 10

*Board of Ed. of Highland Local Sch. Dist. v. U.S. Dep't of Educ.,*
No. 2:16-cv-524 (S.D. Ohio) .................................................................. 6

*Broussard v. First Tower Loan, LLC,*
No. 2:15-cv-01161-CJB-KWR (E.D. La.) ............................................... 6

*Carcaño v. McCrory,*
No. 1:16-cv-236-TDS-JEP (M.D. N.C.) .............................................. 4, 11

*Chavez v. Credit Nation Auto Sales, LLC,*
No. 1:13-cv-312-WSD-JCF (N.D. Ga.) .................................................. 5

*Coen v. Hoffman-La Roche,*
No. 06-Civ-13497, 2007 U.S. Dist. LEXIS 23132 (S.D.N.Y.
Mar. 21, 2007) ...................................................................................... 14

*Coffey v. Van Dorn Iron Works,*
796 F.2d 217 (7th Cir. 1986) ............................................................... 14

*Data Treasury Corp. v. First Data Corp.,*
243 F. Supp. 2d 591 (N.D. Tex. 2003) ................................................. 13

*Doe v. Regional School Unit 26,* 86 A.3d 600 (Me. 2014) ........................... 4

*Doe v. Yunits,*
No. 001060A, 2000 WL 33162199 (Mass. Super. Oct. 11, 2000) ........... 4

*Dupre v. Spanier Marine Corp.,*
810 F. Supp. 823 (S.D. Tex. 1993) ....................................................... 14

*Envtl. Def. Fund v. Marsh,*
651 F.2d 983 (5th Cir. 1981) ............................................................... 13

*Finkle v. Howard County*, Md.,
   12 F. Supp. 3d 780 (D. Md. 2014) ........................................................ 6

*G.G. ex rel. Grimm v. Gloucester Cty. Sch. Bd.*,
   822 F.3d 709 (4th Cir. 2016) ........................................ 4, 12, 15, 16

*Glenn v. Brumby*,
   663 F.2d 1312 (11th Cir. 2011) ..................................................... 5, 16

*Glob. Touch Sols., LLC v. Toshiba Corp.*,
   109 F. Supp. 3d 882 (E.D. Va. 2015) ............................................... 14

*In re Apple, Inc.*,
   602 F.3d 909 (8th Cir. 2010) ............................................................ 15

*In re ERG Intermediate Holdings, LLC*,
   No. 15-31858-HDH11, 2015 Bankr. LEXIS 3639 (Bankr.
   N.D. Tex. Oct. 26, 2015) ................................................................... 14

*In re Korean Air Lines Disaster of Sept. 1, 1983*,
   829 F.2d 1171 (D.C. Cir. 1987) ........................................................ 17

*In re Mallon, Transsexual Surgery*,
   DAB No. 2576 (2014) .......................................................................... 4

*In re Medrad, Inc.*, No. 586,
   1999 U.S. App. LEXIS 17011 (Fed. Cir. June 25, 1999) ..................... 14

*In re Volkswagen of Am., Inc.*,
   545 F.3d 304 (5th Cir. 2008) ............................................................ 19

*John Doe #1 v. Veneman*,
   380 F.3d 807 (5th Cir. 2004) .............................................................. 7

*Lake Charles Diesel, Inc. v. Gen. Motors Corp.*,
   328 F.3d 192 (5th Cir. 2003) .............................................................. 7

*Lewis-Gursky v. Citigroup, Inc.*,
   No. 15CV3213-LTS-DCF, 2015 U.S. Dist. LEXIS 166416
   (S.D.N.Y. Dec. 11, 2015) ................................................................... 14

*Lopez v. River Oaks Imaging & Diagnostic Group*,
   542 F. Supp. 2d 653 (S.D. Tex. 2008) ............................................. 5, 9

*Mitchell v. Axcan Scandipharm, Inc.*,
No. 05-243, 2006 WL 456173 (W.D. Pa. Feb. 17, 2006) ..................................... 5, 9

*Norsworthy v. Beard*,
87 F. Supp. 3d 1164 (N.D. Cal. 2015) ...................................................... 6

*Powell v. I-Flow Corp.*,
711 F. Supp. 2d 1012 (D. Minn. 2010) .................................................. 15

*Price Waterhouse v. Hopkins*,
490 U.S. 228 (1989) ........................................................................ 9

*Roberts v. Clark County School District*,
No. 2:15-CV-00388-JAD-PAL (D. Nev.) .................................................. 5

*Rosa v. Park West Bank*,
214 F.3d 213 (1st Cir. 2000) ............................................................. 4

*Schroer v. Billington*,
577 F. Supp. 2d 293 (D.D.C. 2008) ...................................................... 9

*Schwenk v. Hartford*,
204 F.3d 1187 (9th Cir. 2000) ........................................................ 9, 16

*Smith v. City of Salem*,
378 F.3d 566 (6th Cir. 2004) ......................................................... 9, 16

*Students & Parents for Privacy v. United States Dep't of Educ.*,
No. 16 C 4945 (N.D. Ill.) .................................................................. 4

*Tronetti v. TLC HealthNet Lakeshore Hosp.*,
No. 03-cv-375E, 2003 WL 22757935 (W.D.N.Y. 2003) ............................... 9

*United States v. AMC Entm't, Inc.*,
549 F.3d 760 (9th Cir. 2008) ........................................................... 17

*United States v. Mendoza*,
464 U.S. 154 (1984) ...................................................................... 18

*Va. Soc'y for Human Life v. FEC*,
263 F.3d 379 (4th Cir. 2001) ........................................................... 17

*Wireless Consumers Alliance, Inc. v. T-Mobile USA, Inc.*,
 No. C 03-3711, 2003 U.S. Dist. LEXIS 26802 (N.D. Cal. Oct.
 14, 2003)...................................................................................................................... 14

## STATUTES

28 U.S.C. § 1391........................................................................................................... 13

28 U.S.C. § 1404........................................................................................................... 13

## RULES

Fed. R. Civ. P. 65(d) ....................................................................................................... 7

## OTHER AUTHORITIES

*Lusardi v. McHugh*,
 Appeal No. 0120133395, 2015 WL 1607756 (EEOC Apr. 1, 2015) ......................... 6

*Macy v. Holder*,
 Appeal No. 0120120821, 2012 WL 1435995 (EEOC Apr. 20, 2012) ...................... 6

Morgan Smith, Paxton Shopped Transgender Policy to Second School
 District, The Texas Tribune (May 26, 2012), available at
 https://www.texastribune.org/2016/05/26/paxton-shopped-
 transgender-policy-second-school/ ...................................................................... 17

*Student v. Arcadia Unified School District*,
 DOJ Case No. DJ 169-12C-70, OCR Case No. 09-12-1020 (Cal.) ........................... 6

# INTRODUCTION

American Civil Liberties Union Foundation ("ACLU") and American Civil Liberties Union of Texas ("ACLU-TX"), GLBTQ Legal Advocates and Defenders ("GLAD"), Lambda Legal Defense and Education Fund, Inc. ("Lambda Legal"), National Center for Lesbian Rights ("NCLR"), and Transgender Law Center ("TLC") (collectively, "*Amici*") file this brief as *amici curiae* in opposition to Plaintiffs' Motion for a Preliminary Injunction (the "Application"). *Amici* are non-profit organizations that, *inter alia*, engage in legal advocacy on behalf of transgender and gender-nonconforming individuals.

*Amici* respectfully request that the Court deny the Application for several reasons. First, Plaintiffs fail to identify specifically what they want to enjoin. The Application complains of Defendants' interpretative guidance dating back to 2010, while Plaintiff's Amended Complaint requests preliminary relief "enjoining the new rules, regulations, guidance and interpretations from having any legal effect." What that means is anyone's guess.

Second, Plaintiffs appear to be seeking a nationwide injunction that could interfere with existing and future legal proceedings and the development of precedent in the federal circuit courts of appeals on many important legal issues that may ultimately be resolved by the United States Supreme Court. *Amici*, as well as other organizations and private attorneys have, and will continue to have, clients from around the country who have matters pending in administrative and judicial proceedings involving the legal issues referenced in Plaintiffs' Amended Complaint

1

and Application. Plaintiffs have failed to identify any legitimate basis for this Court to issue an injunction that might affect the legal rights of individuals who are not before this Court and who do not reside in Texas—or even within the Fifth Circuit. An injunction that interferes with these legal proceedings could prevent the development of precedent in federal courts across the country, a crucial part of our judicial system that aids in the consideration of matters by the Supreme Court.

Finally, the Court should deny Plaintiffs' Application because they have forum shopped. Plaintiffs Alabama, Arizona Department of Education, Georgia, Huber-Overgaard Unified School District, Kentucky, Tennessee, and West Virginia would lose this lawsuit if they filed it in their home states or anywhere in the federal circuits whose law governs them. Each of the relevant circuits (the Fourth, Sixth, Ninth, and Eleventh Circuits) has ruled that the prohibition of sex discrimination includes discrimination against transgender individuals. Other Plaintiffs—Wisconsin, Gov. Paul LePage of Maine, Utah and Oklahoma—are similarly not governed by the Fifth Circuit Court of Appeals and should instead bring their claims in district courts in their home jurisdictions where the appropriate federal circuit court of appeals may then have the opportunity to opine about these important issues. And, the non-Texas Plaintiffs who do reside within the jurisdiction of the Fifth Circuit Court of Appeals—Louisiana and Mississippi—should bring their claims in federal district courts in their home states. By choosing to instead file their claims in this Court, the non-Texas plaintiffs are forum shopping, a practice which should not be countenanced. In the

2

interests of justice the claims of the non-Texas Plaintiffs should be severed and transferred to their home forums.

## INTEREST OF AMICI CURIAE

ACLU, ACLU-TX, GLAD, Lambda Legal, NCLR, and TLC are organizations dedicated to advancing and defending the civil rights of transgender people. Through their activities, *Amici* regularly represent transgender people in administrative and judicial proceedings. Accordingly, these groups have extensive experience litigating cases affecting the rights of transgender people, including participation as either party counsel or *amicus curiae* in federal cases holding or raising the issue that gender identity discrimination is a form of sex discrimination under Title VII and Title IX. The issues pending before the Court are of acute concern to *amici* and the community they represent, who may stand to be directly impacted by the Court's ruling. Transgender people face staggering levels of discrimination in schools, workplaces, and sex-segregated facilities. Calls for legal help in this area are consistently among the most numerous that *amici* receive. *Amici* thus submit this brief to place the specific issues raised by Plaintiffs here in the context past and present claims and litigation throughout the federal system that already have resulted in significant developments in the law—authority that Plaintiffs now seek to circumvent. The Appendix to this brief lists some of the significant legal matters in which *amici* appeared as party counsel or *amicus curiae*, as well as identifies the organizational attorneys who materially contributed to this brief.

## I.     American Civil Liberties Union Foundation and American Civil Liberties Union of Texas

The American Civil Liberties Union is a nationwide, nonprofit, nonpartisan organization with approximately 500,000 members dedicated to defending the principles embodied in the Constitution and our nation's civil rights laws.  The ACLU of Texas is one of its affiliates.  The ACLU and ACLU of Texas have a strong and longstanding interest in protecting the rights of lesbian, gay, bisexual, and transgender people from discrimination, including discrimination on the basis of sex. The ACLU is actively litigating Title VII and Title IX cases on behalf of transgender people across the country, including *G.G. ex rel. Grimm v. Gloucester Cty. Sch. Bd.*, 822 F.3d 709 (4th Cir. 2016); *Carcaño v. McCrory*, No. 1:16-cv-236-TDS-JEP (M.D. N.C.); and *Students & Parents for Privacy v. United States Dep't of Educ.*, No. 16 C 4945 (N.D. Ill.)

## II.    GLBTQ Legal Advocates & Defenders

GLBTQ Legal Advocates & Defenders is a New England-wide legal rights organization that seeks equal justice for all persons under the law regardless of their sexual orientation, gender identity, or HIV/AIDS status. The Transgender Rights Project of GLAD seeks to establish clear legal protections for the transgender community through public impact litigation and law reform. *See, e.g., Rosa v. Park West Bank*, 214 F.3d 213 (1st Cir. 2000); *Doe v. Yunits*, No. 001060A, 2000 WL 33162199 (Mass. Super. Oct. 11, 2000); *O'Donnabhain v. Commissioner*, 134 T.C. 34 (T.C. 2010); *Doe v. Regional School Unit 26*, 86 A.3d 600 (Me. 2014); *In re Mallon, Transsexual Surgery*, DAB No. 2576 (2014).

## III.    Lambda Legal Defense and Education Fund, Inc.

Founded in 1973, Lambda Legal Defense and Education Fund, Inc. is the nation's oldest and largest legal organization whose mission is to achieve full recognition of the civil rights of lesbian, gay, bisexual, and transgender ("LGBT") people and those living with HIV through impact litigation, education, and public policy. Lambda Legal has extensive experience litigating cases affecting the rights of transgender people, including participation as either party counsel or amicus curiae in federal cases holding or raising the issue that gender identity discrimination is a form of sex discrimination under Title VII, Title IX, or the Equal Protection Clause. *See, e.g.*, *Glenn v. Brumby*, 663 F.2d 1312 (11th Cir. 2011); *Lopez v. River Oaks Imaging & Diagnostic Group*, 542 F. Supp. 2d 653 (S.D. Tex. 2008); *Mitchell v. Axcan Scandipharm, Inc.*, No. 05-243, 2006 WL 456173 (W.D. Pa. Feb. 17, 2006); *Carcaño v. McCrory*, No. 1:16-cv-236-TDS-JEP (M.D. N.C.); *Chavez v. Credit Nation Auto Sales, LLC*, No. 1:13-cv-312-WSD-JCF (N.D. Ga.); *G.G. v. Gloucester County School Bd.*, No. 4:15-cv-54 (E.D. Va.); *Roberts v. Clark County School District,* No. 2:15-CV-00388-JAD-PAL (D. Nev.).

## IV.    National Center for Lesbian Rights

The National Center for Lesbian Rights ("NCLR") is a national non-profit legal organization dedicated to protecting and advancing the civil rights of lesbian, gay, bisexual, and transgender people and their families through litigation, public policy advocacy, and public education. Since its founding in 1977, NCLR has played a leading role in securing fair and equal treatment for LGBT people and their families in cases across the country involving constitutional and civil rights. NCLR has a

particular interest in promoting equal opportunity for LGBT people in schools and the workplace through legislation, policy, and litigation, and regularly represents LGBT people in courts throughout the country in cases seeking to redress discrimination in education and employment. NCLR has represented transgender individuals in many cases seeking to establish that discrimination on these bases constitutes sex discrimination under Title VII, Title IX, or the Equal Protection Clause. *See, e.g., Board of Ed. of Highland Local Sch. Dist. v. U.S. Dep't of Educ.,* No. 2:16-cv-524 (S.D. Ohio); *Broussard v. First Tower Loan, LLC*, No. 2:15-cv-01161-CJB-KWR (E.D. La.); *Student v. Arcadia Unified School District,* DOJ Case No. DJ 169-12C-70, OCR Case No. 09-12-1020 (Cal.)

## V.    Transgender Law Center

Transgender Law Center is the leading national legal organization dedicated to advancing the rights of transgender and gender nonconforming people through litigation, policy advocacy, and public education.  TLC works to change law, policy, and attitudes so that all people can live safely, authentically, and free from discrimination regardless of their gender identity or expression. TLC has served as counsel or amicus on a number of significant cases holding that transgender people are protected from sex discrimination under Title VII, Title IX, and the Equal Protection Clause. *See, e.g., Macy v. Holder*, Appeal No. 0120120821, 2012 WL 1435995 (EEOC Apr. 20, 2012); *Lusardi v. McHugh*, Appeal No. 0120133395, 2015 WL 1607756 (EEOC Apr. 1, 2015); *Norsworthy v. Beard*, 87 F. Supp. 3d 1164 (N.D. Cal. 2015); *Finkle v. Howard County*, Md., 12 F. Supp. 3d 780 (D. Md. 2014) (submitted amicus brief).

**ARGUMENT**

I. **This Court Should Deny Plaintiffs' Request for a Nationwide Preliminary Injunction Because Plaintiffs Have Not Identified the Conduct They Seek to Enjoin.**

A preliminary injunction is an "extraordinary remedy" that should not be granted unless its proponent clearly shows: "(1) a substantial likelihood that he will prevail on the merits, (2) a substantial threat that he will suffer irreparable injury if the injunction is not granted, (3) his threatened injury outweighs the threatened harm to the party whom he seeks to enjoin, and (4) granting the preliminary injunction will not disserve the public interest." *Lake Charles Diesel, Inc. v. Gen. Motors Corp.*, 328 F.3d 192, 195–96 (5th Cir. 2003). Where, as here, the Plaintiffs seek the sort of injunctive relief that could adversely affect the rights of third parties or that would interfere with the public interest in affording a broad reading to remedial laws, such as Title VII and Title IX, the Court should give particular weight to the third and fourth factors in considering whether to grant such relief and, if granted, its scope.

Plaintiffs' Application lacks any specificity about the conduct they seek to enjoin. It is well-settled that an injunction must "state its terms specifically" and "describe in reasonable detail" the conduct restrained or required. Fed. R. Civ. P. 65(d). Every injunction must be narrowly tailored "to remedy the specific action which gives rise to the order." *John Doe #1 v. Veneman*, 380 F.3d 807, 818 (5th Cir. 2004). Plaintiffs' requested injunction fails these requirements because they have not precisely identified what they seek to enjoin.

7

The Application provides little guidance to this Court about the scope of the injunction that Plaintiffs seek. Although much of its focus is on the Joint Letter issued in May 2016, the Application complains that the Joint Letter is "just the latest event" of an ongoing effort by the United States Department of Justice ("DOJ"), the United States Equal Employment Opportunity Commission ("EEOC"), the United States Department of Education ("ED"), and the Occupational Safety and Health Administration ("OSHA") to include gender identity under Title VII and Title IX. App. at 16; *see also id.* at 14-15 (arguing that 2014 Holder memo and OSHA directives require notice and comment under the APA). Plaintiffs also repeatedly refer to "mandates" by the federal agencies and argue that Title VII's and Title IX's prohibitions against sex discrimination do not extend to gender identity. App. at 1-2, 7. But none of this helps identify what Plaintiffs seek to preliminarily enjoin.

Plaintiffs' Complaint also fails to provide the required specificity. It seeks "[p]reliminary relief, enjoining the new rules, regulations, guidance and interpretations from having any legal effect." First Amended Complaint ("FAC") at 40, ¶ 120. Exactly what that means—and how it would be implemented—is unclear. Would the injunction preclude DOJ or ED from arguing in this or any other court that sex discrimination under Title VII and Title IX includes discrimination against transgender employees and students? By prohibiting "interpretations" from having any "legal effect," are Plaintiffs asking this court to enjoin judicial and administrative proceedings in which Defendants are parties? Would the injunction, for instance, prohibit DOJ from continuing to litigate the case against North Carolina discussed

in the First Amended Complaint? FAC at ¶¶19-22, 40-44. Would it preclude other courts from considering the interpretative guidance when deciding whether discrimination against a specific transgender person violates Title VII or Title IX?

Regardless, the Court should deny any injunction that excludes transgender people from protection under Title VII's and Title IX's prohibition of sex discrimination. More than a decade of case law holds that discrimination against transgender individuals is a form of sex discrimination. *See, e.g.*, *Smith v. City of Salem*, 378 F.3d 566 (6th Cir. 2004) (holding Title VII prohibits discrimination against transgender individuals based on gender stereotyping); *Schwenk v. Hartford*, 204 F.3d 1187, 1201-02 (9th Cir. 2000) (same); *Schroer v. Billington*, 577 F. Supp. 2d 293 (D.D.C. 2008); *Lopez v. River Oaks Imaging & Diagnostic Group, Inc.*, 542 F. Supp. 2d 653 (S.D. Tex. 2008); *Mitchell v. Axcan Scandipharm, Inc.*, No. 05-243, 2006 WL 456173, at *2 (W.D. Pa. 2006); *Tronetti v. TLC HealthNet Lakeshore Hosp.*, No. 03-cv-375E, 2003 WL 22757935, at *4 (W.D.N.Y. 2003). These cases and others follow Supreme Court precedent, *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989), holding that discrimination based on sex-based characteristics or expectations is unlawful sex discrimination. These cases recognize that discrimination against transgender individuals rests upon such sex-based assumptions and stereotypes and, therefore, violates federal anti-discrimination statutes.[1]

---

[1] Notably, all of the cases cited above predate any of the administrative guidance that Plaintiffs identified in their First Amended Complaint, which, of course, refutes any notion that the interpretative guidance is a departure from established law.

9

II.     **The Court Should Reject Plaintiffs' Request for a Nationwide Injunction Because It Would Interfere with the Development of Legal Precedent and Could Adversely Affect Legal Proceedings Involving Individuals Not Before This Court.**

As national public interest advocacy groups, *Amici* regularly litigate claims in judicial and administrative forums on behalf of transgender clients. The Appendix to this brief identifies nine past and present federal actions in which *Amici* represent various parties. In addition, *Amici* have filed amicus briefs in six actions litigating the scope of sex discrimination and its application to discrimination against transgender individuals. *Amici* also are currently representing parties in 23 administrative proceedings before the EEOC, ED, and other federal agencies. *Amici* intend to continue to represent clients in similar litigation and administrative proceedings.

The pending cases and administrative proceedings in which *Amici* are counsel are ripe for adjudication and involve important stakes for people who are not before this Court. For example, in the recently filed case of *A.W. v. Kenosha Unified School District No. 1 Board of Education*, No. 2:16-cv-943 (E.D. Wis. filed July 19, 2016), TLC represents A.W, a 16-year-old transgender boy who contends that the defendants have violated Title IX by treating him differently than other students because he is transgender.  *See, e.g.,* Compl., *id.* ¶¶ 1 – 5. A.W.'s medical providers, family, friends, and classmates recognize that A.W. is a boy. *Id.* ¶ 1. Nevertheless, the defendants in that case have barred A.W. from using the same restrooms as other boys; refused to use his male name or to refer to him by male pronouns; initially refused to permit him to run for junior prom king rather than prom queen (relenting

only in the face of overwhelming protests from his classmates); and even instructed counselors to issue green wristbands to A.W. and other transgender students to mark them out for differential treatment. *Id.* ¶ 2. A.W.'s challenge is ripe—he has been subjected to sex-based harms because he is transgender and he is seeking redress for those harms under Title IX.

Similarly, in North Carolina, several plaintiffs represented by Lambda Legal, the ACLU and the ACLU of North Carolina have challenged H.B. 2, which, among other things, requires transgender individuals to use the restroom associated with the sex designated on the person's birth certificate. First Am. Compl., *Carcaño v. McCrory*, No. 1:16-cv-236-TDS-JEP (M.D. N.C. filed Apr. 21, 2016). As has been widely reported, the North Carolina General Assembly passed H.B. 2 to nullify a Charlotte city ordinance that extended non-discrimination policies to the LGBT community and required transgender people to be treated equally with respect to restrooms and other public accommodations. *Id.* ¶¶ 138-39. Prior to the enactment of H.B. 2, the plaintiffs in the case (who are transgender men and women) used the same public restrooms as others, based on their gender identity. *Id.* ¶¶ 21, 24, 43, 59, 62, 76, 87-88, 90, 105-06. As a result of H.B. 2, however, their ability to do so has been severely compromised and they are no longer legally permitted to use the proper restroom or other gender-specific facilities. Thus, there is a ripe dispute between the plaintiffs and defendants. As a result, these plaintiffs have filed a lawsuit contending, among other things, that H.B. 2 violates Title IX's prohibition of sex discrimination.

In addition, the ACLU is still actively litigating *G.G. v. Gloucester County School Board*, on behalf of a transgender boy in Virginia who was prohibited from using the boys' restrooms and forced to use separate single-stall restrooms that no other student is required to use.  The United States filed a statement of interest and an amicus brief in support of G.G., and the Fourth Circuit concluded that the United States' argument was a reasonable interpretation of Title IX and its implementing regulations.  The case is currently in the middle of discovery with a trial date set for January 31, 2017.

Each of these lawsuits are mere examples of the litigation currently winding through the federal courts and administrative agencies. These cases involve individuals who are suffering concrete, actual, and ongoing harms – not the abstract, hypothetical, and speculative harms that Plaintiffs allege. Depending on its terms, a nationwide injunction could have an impact on these and other lawsuits, as well as on the administrative proceedings that are pending before various government agencies. Yet, the people who could be directly affected by such an injunction are not before this Court, because they have correctly filed their complaints in other courts or with the appropriate administrative agency.

*Amici* submit that the potential effect on parties not before the Court is an important factor for the Court to consider to avoid burdening the rights of claimants not parties. Indeed, failure to do so raises serious due process concerns. An injunction must also take account of "the larger interests of society that might be adversely affected by an overly broad injunction." *Envtl. Def. Fund v. Marsh*, 651 F.2d 983, 1006

(5th Cir. 1981). Plaintiffs have not articulated a legitimate reason for this Court to potentially disrupt all of these proceedings with a nationwide injunction.

## III. This Court Should Not Issue A Nationwide – Or Any – Injunction When Plaintiffs Have Forum Shopped.

*Amici* respectfully submit that the Court should exercise its authority under 28 U.S.C. § 1404 to transfer the claims of all non-Texas plaintiffs to federal district courts in their home jurisdictions. Section 1404 requires courts to determine whether venue should be transferred to another district "[f]or the convenience of parties and witnesses [and] in the interest of justice."[2] 28 U.S.C. § 1404(a). For litigants with pervasive contacts nationwide, who are therefore subject to venue "virtually anywhere," 28 U.S.C. § 1404—which allows the Court to transfer venue— provides "some recourse from the highly permissive general venue rule found in 28 U.S.C. § 1391." *1-Stop Fin. Serv. Ctrs. of Am., LLC v. Astonish Results, LLC*, No. A-13-CA-961-SS, 2014 U.S. Dist. LEXIS 8117, at *12 (W.D. Tex. Jan. 23, 2014).

As the plain language of § 1404 indicates, "'the interest of justice' is an important factor in the transfer analysis." *Data Treasury Corp. v. First Data Corp.*, 243 F. Supp. 2d 591, 593 (N.D. Tex. 2003). The interest of justice encompasses "those public-interest factors of systematic integrity and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 30 (1988). This factor "may be determinative in a particular case, even if the convenience of the parties and witnesses might call for a different result." *In re Medrad, Inc.*, No. 586, 1999 U.S. App. LEXIS 17011, at *7 (Fed. Cir.

---

[2] A court may transfer venue at the request of the parties or *sua sponte*. *Baron v. Aguilar*, No. 3:12-cv-1242, 2013 U.S. Dist. LEXIS 8657, at *10 (N.D. Tex. Jan. 18, 2013).

June 25, 1999) (quoting *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 221 (7th Cir. 1986)).

Justice is not served when plaintiffs engage in blatant forum shopping to evade controlling precedent in their home forums. *See Wireless Consumers Alliance, Inc. v. T-Mobile USA, Inc.*, No. C 03-3711, 2003 U.S. Dist. LEXIS 26802, at *14 (N.D. Cal. Oct. 14, 2003) ("Another related 'interest of justice' factor is the prevention of forum shopping."); *Lewis-Gursky v. Citigroup, Inc.*, No. 15CV3213-LTS-DCF, 2015 U.S. Dist. LEXIS 166416, at *6 (S.D.N.Y. Dec. 11, 2015) ("The interests of justice require that this Court not reward forum shopping."); *Glob. Touch Sols., LLC v. Toshiba Corp.*, 109 F. Supp. 3d 882, 906 (E.D. Va. 2015) ("[T]he interests of justice are not served by forum-shopping.") (quoting *Coen v. Hoffman-La Roche*, No. 06-Civ-13497, 2007 U.S. Dist. LEXIS 23132 (S.D.N.Y. Mar. 21, 2007); *see In re ERG Intermediate Holdings, LLC*, No. 15-31858-HDH11, 2015 Bankr. LEXIS 3639, at *18 (Bankr. N.D. Tex. Oct. 26, 2015) ("Courts evaluating the 'interest of justice' also commonly consider whether a [litigant] has engaged in abusive forum shopping, and will transfer a case if the court finds such abuse."). Thus, courts "give[] the plaintiff's choice of forum close scrutiny when the plaintiff does not live in the [district]" and are "loathe to respect those choices that appear to be blatant attempts at forum shopping with little or no factual justification." *Dupre v. Spanier Marine Corp.*, 810 F. Supp. 823, 828 (S.D. Tex. 1993); *see also Foster v. Nationwide Mut. Ins. Co.*, No. C 07-04928 SI, 2007 U.S. Dist. LEXIS 95240, at *6 (N.D. Cal. Dec. 14, 2007) ("Where forum-shopping is evident, however, courts should disregard plaintiff's choice of forum"); *Powell v. I-Flow Corp.*,

14

711 F. Supp. 2d 1012, 1015 (D. Minn. 2010) ("'[T]he risk that the plaintiff chose the forum to take advantage of favorable law,' rather than because the forum has a connection to the dispute, counsels against deferring to the plaintiff's choice of forum.") (quoting *In re Apple, Inc.*, 602 F.3d 909, 913 (8th Cir. 2010)).

Several Plaintiffs have selected this Court to avoid controlling authority in their home circuits. Indeed, more than half of the Plaintiffs come to this Court from circuits that already have concluded that sex discrimination includes discrimination against transgender people. Those Plaintiffs – Alabama, Arizona Department of Education, Georgia, Huber-Overgaard Unified School District, Kentucky, Tennessee, and West Virginia – should not be permitted to evade controlling authority in their home circuit by joining this action. There is little doubt that these Plaintiffs would lose this lawsuit in their home state or anywhere in their home circuit and that these Plaintiffs joined this lawsuit in hope of avoiding this result.

West Virginia illustrates the problem. The Fourth Circuit already has upheld the validity of one of the agency interpretations challenged in this case. *G.G. v. Gloucester Cty. Sch. Bd.*, No. 15-2056, 2016 U.S. App. LEXIS 7026 (4th Cir. Apr. 19, 2016). Here, however, West Virginia alleges that the term "sex" refers exclusively to "physiological distinctions between males and females" and does not include discrimination against transgender persons. (*See, e.g.*, FAC, ¶¶ 36, 46.) West Virginia made the same argument to the Fourth Circuit in amicus briefs on behalf of the school board in *G.G.*, but they were rejected. The Fourth Circuit examined the same dictionary definitions cited in the Amended Complaint and concluded that "varying

15

physical, psychological, and social aspects" are all encompassed within the term "sex." *G.G.*, 2016 U.S. App. LEXIS 7026, at *26. "The dictionaries, therefore, used qualifiers such as reference to the '*sum* of' various factors, '*typical* dichotomous occurrence,' and '*typically* manifested as maleness and femaleness.'" *Id.* If West Virginia had filed its brief in support of a preliminary injunction in one of the U.S. District Courts for West Virginia, it would be ethically obligated to acknowledge *G.G.* as contrary controlling authority. By claiming venue in this Court, however, West Virginia is able to file a brief that never cites *G.G.*

In addition to West Virginia, plaintiffs Alabama (Eleventh Circuit), Arizona Department of Education (Ninth Circuit), Georgia (Eleventh Circuit), Huber-Overgaard Unified School District (Ninth Circuit), Kentucky (Sixth Circuit), and Tennessee (Sixth Circuit) would lose this lawsuit if each filed it in any federal court within its borders or its circuit. That is because the Sixth, Ninth, and Eleventh Circuits have already considered and rejected the same arguments asserted by the defendants here; instead, they have held explicitly rejected the assertion that the term "sex" excludes social or cultural traits and have held that discrimination against a transgender individual is based on sex. *See*, *e.g.*, *Schwenk v. Hartford*, 204 F.3d 1187, 1202 (9th Cir. 2000); S*mith v. City of Salem, Ohio*, 378 F.3d 566, 573 (6th Cir. 2004); *Glenn v. Brumby*, 663 F.3d 1312, 1317 (11th Cir. 2011).

In this venue, this Court may (and should) consult *G.G.*, *Schwenk*, *Smith*, and *Glenn* as persuasive authority. But, if this Court were in the Fourth, Sixth, Ninth, or Eleventh Circuit, it would be constrained by the relevant authority—an outcome

16

these Plaintiffs clearly seek to avoid.[3] In light of such obvious forum-shopping, the Court should sever and transfer these Plaintiffs' claims to the district courts within their home state.

Furthermore, comity among the many circuit courts also requires that the Court sever and transfer the claims of all Plaintiffs that reside outside of the Fifth Circuit: Alabama, Wisconsin, West Virginia, Tennessee, the Arizona Department of Education, the Heber-Overgaard Unified School District, Maine, Oklahoma, Utah, Georgia, and Kentucky. Courts "must be mindful of the decisions of our sister circuits, when [they] make decisions in cases affecting litigants' legal rights and remedies in the geographic boundaries of their circuits." *United States v. AMC Entm't, Inc.*, 549 F.3d 760, 771 (9th Cir. 2008).

> Principles of comity require that, once a sister circuit has spoken to an issue, that pronouncement is the law of that geographical area. Courts in [one circuit] should not grant relief that would cause substantial interference with the established judicial pronouncements of such sister circuits. To hold otherwise would create tension between circuits and would encourage forum shopping."

*Id.* at 773; *Cf. Va. Soc'y for Human Life v. FEC,* 263 F.3d 379, 393–94 (4th Cir. 2001).

"Binding precedent for all is set only by the Supreme Court, and for the district courts within a circuit, only by the court of appeals for that circuit." *In re Korean Air Lines Disaster of Sept. 1, 1983*, 829 F.2d 1171, 1176 (D.C. Cir. 1987).

---

[3] The appearance of forum shopping is further enhanced by news articles indicating that the Texas Attorney General asked Harrold Independent School District and Wichita Falls School district to pass new policies conflicting with the Department of Education's guidance in order to create venue in this division. Morgan Smith, Paxton Shopped Transgender Policy to Second School District, The Texas Tribune (May 26, 2012), available at https://www.texastribune.org/2016/05/26/paxton-shopped-transgender-policy-second-school/.

The Supreme Court has also emphasized that the federal government should generally be allowed to litigate questions of law in different circuits. *United States v. Mendoza*, 464 U.S. 154, 160 (1984). Allowing the government to relitigate significant questions is not designed to protect the government, but rather to promote the public interest in development of the law and facilitate the Supreme Court's consideration of significant legal questions.

> A rule allowing nonmutual collateral estoppel against the Government in such cases would substantially thwart the development of important questions of law by freezing the first final decision rendered on a particular legal issue. Allowing only one final adjudication would deprive this Court of the benefit it receives from permitting several courts of appeals to explore a difficult question before this Court grants certiorari.

*Id.*

There are no private interests (such as the availability of witnesses and documents) that justify venue in this Court for the out-of-state Plaintiffs. Their only apparent reason for joining as plaintiffs in this case is to ride Texas's coattails into the Northern District of Texas. These Plaintiffs' claims should be severed and transferred to their home states for consideration in accordance with the law of each relevant circuit.

The Fifth Circuit has articulated certain private interest and public interest factors that courts should consider when considering venue:

> The private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local

18

> interest in having localized interests decided at home; (3) the familiarity
> of the forum with the law that will govern the case; and (4) the avoidance
> of unnecessary problems of conflict of laws [or in] the application of
> foreign law.

*In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (internal quotations

and citations omitted). These factors are neither exhaustive nor exclusive. *Id.*

Nonetheless, in addition to Plaintiffs' evident forum shopping, these factors favor

transfer to each Plaintiff's home state. Proceeding in each home state will allow easier

access to relevant sources of proof and the ability to secure willing and unwilling

witnesses' attendance at hearings. The public interest factors also favor transfer. The

second and fourth public interest factors favor venue in each Plaintiff's home state,

as doing so will avoid conflicts with controlling Circuit precedent (*see supra*) and will

allow local interests to be decided locally. The first and third public factors do not

weigh in favor of one jurisdiction over another. Accordingly, the balance of the factors

indicates that each Plaintiff's claims should be severed and transferred to each

Plaintiff's home state for consideration in accordance with the law of the relevant

Circuit.

## CONCLUSION

The Court should deny Plaintiffs' Application. The Court should further sever

and transfer Plaintiffs Alabama, Wisconsin, West Virginia, Tennessee, the Arizona

Department of Education, the Heber-Overgaard Unified School District, Maine,

Oklahoma, Utah, Georgia, Kentucky, Louisiana, and Mississippi to their home

forums.

Respectfully submitted,


__/s/ *Kenneth D. Upton, Jr.*__

Kenneth D. Upton, Jr.
Texas State Bar No. 00797972
kupton@lambdalegal.org

Paul D. Castillo
Texas State Bar No. 24049461
pcastillo@lambdalegal.org


LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
3500 Oak Lawn Avenue, Suite 500
Dallas, Texas 75219-6722
Telephone:  (214) 219-8585
Facsimile:   (214) 219-4455

COUNSEL OF RECORD
FOR *AMICI CURIAE*


## CERTIFICATE OF SERVICE

On July 27, 2016, I electronically submitted the foregoing document to the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the Court. I hereby certify that I have served counsel of record for Plaintiffs and Defendants electronically through the Court's ECF system.


_____*s/ Kenneth D. Upton, Jr.*_____
Kenneth D. Upton, Jr.

## APPENDIX OF KEY CASES

### Past and Pending Cases Where *Amici* Serve As Counsel:

1. *A.W. v. Kenosha Unified School District*, No. 2:16-cv-00943 (E.D. Wisc.) (7th Cir.) (Transgender Law Center)

2. *Carcaño v. McCrory*, No. 1:16-cv-236-TDS-JEP (M.D. N.C.) (ACLU and Lambda Legal)

3. *Dawson v. H&H Elec., Inc.*, No. 4:14CV00583 SWW, 2015 WL 5437101, at *1 (E.D. Ark. Sept. 15, 2015) (ACLU)

4. *G.G. ex rel. Grimm v. Gloucester Cty. Sch. Bd.*, 822 F.3d 709 (4th Cir. 2016) (ACLU)

5. *Glenn v. Brumby*, 663 F.2d 1312 (11th Cir. 2011) (Lambda Legal)

6. *Highland Local Sch. Dist. v. U.S. Dep't of Educ.*, No. 2:16-cv-524 (S.D. Ohio) (National Center for Lesbian Rights)

7. *Lopez v. River Oaks Imaging & Diagnostic Group*, 542 F. Supp. 2d 653 (S.D. Tex. 2008) (Lambda Legal)

8. *Schroer v. Billington*, 577 F. Supp. 2d 293 (D.D.C. 2008) (ACLU)

9. *Students & Parents for Privacy v. United States Dep't of Educ.*, No. 16 C 4945 (N.D. Ill.) (ACLU)


### Past and Pending Cases Where *Amici* Filed Amicus Briefs:

1. *Blatt v. Cabela's Retail Inc.*, No. 5:14-cv-4822 (E.D. Pa.) (Transgender Law Center and National Center for Lesbian Rights)

2. *Carcaño v. McCrory*, No. 1:16-cv-236-TDS-JEP (M.D. N.C.) (Transgender Law Center and National Center for Lesbian Rights)

3. *Chavez v. Credit Nation Auto Sales, LLC*, No. 1:13-cv-312-WSD-JCF (N.D. Ga.) (Transgender Law Center and Lambda Legal)

4. *G.G. v. Gloucester County School Bd.*, No. 4:15-cv-54 (E.D. Va.) (Transgender Law Center, National Center for Lesbian Rights, and Lambda Legal)

5. *Mitchell v. Axcan Scandipharm, Inc.*, No. 05-243, 2006 WL 456173  (W.D. Pa. Feb. 17, 2006) (Lambda Legal)

6. *Roberts v. Clark County School District,* No. 2:15-CV-00388-JAD-PAL (D. Nev.) (Lambda Legal)

## ORGANIZATIONAL COUNSEL WHO CONTRIBUTED MATERIALLY TO THE DRAFTING OF THIS BRIEF

James D. Esseks
Joshua Block
Chase B. Strangio
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
125 Broad St.
New York, NY 10004


Rebecca L. Robertson
AMERICAN CIVIL LIBERTIES
UNION OF TEXAS
P.O. Box 8306
Houston, TX 77288


Gary Buseck
Jennifer Levi
GLBTQ LEGAL ADVOCATES &
DEFENDERS
30 Winter Street, Suite 800
Boston, MA 02108


Jon W. Davidson
LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
4221 Wilshire Blvd., Suite 280
Los Angeles, CA  90010

Christopher R. Clark
LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
105 W. Adams, 26th Floor
Chicago, IL 60603


M. Dru Levasseur
LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
120 Wall Street, 19th Floor
New York, NY 10005


Shannon Price Minter
Christopher Stoll
Asaf Orr
NATIONAL CENTER FOR LESBIAN RIGHTS
870 Market Street, Suite 370
San Francisco, CA 94102


Ilona M. Turner
Sasha J. Buchert
Alison Pennington
TRANSGENDER LAW CENTER
1629 Telegraph Ave., Suite 400
Oakland, CA 94612

A-2