# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### WICHITA FALLS DIVISION

| | | |
|---|---|---|
| **STATE OF TEXAS**, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 7:16-cv-54-O |
| | ) | |
| **UNITED STATES OF AMERICA**, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANTS' MOTION FOR CLARIFICATION
OF THE COURT'S PRELIMINARY INJUNCTION ORDER
AND UNOPPOSED REQUEST FOR EXPEDITED CONSIDERATION**

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................... 1

BACKGROUND ..................................................................................................... 3

ARGUMENT .......................................................................................................... 5

   A.  The Court should clarify that the Preliminary Injunction is limited to addressing the plaintiffs' allegations of harm. .......................................................................... 6

       1.  The Court should clarify that the Preliminary Injunction does not extend beyond the use of sex-segregated facilities by transgender individuals in public schools to affect programs addressing discrimination on the basis of race, national origin, or disability and other activities about which the plaintiffs have alleged no harm. ......................... 6

       2.  The Court should clarify that the Preliminary Injunction does not extend beyond the use of sex-segregated facilities to limit well-established prohibitions on sex stereotyping, bullying, and harassment directed towards transgender individuals ....... 8

       3.  The Court should clarify that the Preliminary Injunction, which arises out of claims related to public educational facilities under Title IX, does not affect employment matters arising under Title VII .................................................................. 10

       4.  The Court should clarify that the Preliminary Injunction does not extend beyond enjoining the alleged final agency action to limit other, future actions over which there is no subject-matter jurisdiction ........................................................ 11

   B.  The Court should clarify that the Preliminary Injunction does not limit Defendants' ability to urge other courts to adopt their interpretation of Title VII and Title IX, including in courts that already have accepted that interpretation .................................. 12

   C.  The Court should clarify that the Preliminary Injunction does not limit the enforcement of anti-discrimination statutes outside of the plaintiff states. .......................................... 16

   D.  The Court should clarify that the Preliminary Injunction does not enjoin any activities or programs of the Department of Labor. ...................................................... 20

   E.  The Court should clarify that the Preliminary Injunction does not enjoin the EEOC from fulfilling statutory duties necessary to protect the rights of individuals alleging discrimination. ........................................................................................ 21

CONCLUSION........................................................................................................ 25

## TABLE OF AUTHORITIES

**Cases**

*Alabama Nursing Home Asso. v. Harris*,
  617 F.2d 385 (5th Cir. 1980) ............................................................................ 3, 5

*Califano v. Yamasaki*,
  442 U.S. 682 (1979) ...................................................................................... 2, 17

*Carcaño v. McCrory*,
  No. 1:16-cv-236 (M.D.N.C. Aug. 26, 2016)...............................................................15

*Church of the Holy Light of the Queen v. Holder*,
  443 F. App'x 302 (9th Cir. 2011) ........................................................................ 20

*EEOC v. AirGuide Corp.*,
  No. 7-415, 1978 WL 134 (S.D. Fla. Aug. 29, 1978) ............................................. 22

*EEOC v. Bass Pro Outdoor World, L.L.C.*,
  No. 15-20078, 2016 WL 3397696 (5th Cir. June 17, 2016) ................................... 21

*EEOC v. Boh Bros. Constr. Co.*,
  731 F.3d 444 (5th Cir. 2013) (en banc) .................................................................. 9

*EEOC v. Burlington N., Inc.*,
  644 F.2d 717 (8th Cir. 1981) ................................................................................ 22

*EEOC v. Waffle House, Inc.*,
  534 U.S. 279 (2002) ............................................................................................ 13

*Flores v. Huppenthal*,
  789 F.3d 994 (9th Cir. 2015) ............................................................................... 18

*G.G. ex rel. Grimm v. Gloucester County Sch. Bd.*,
  822 F.3d 709 (4th Cir. 2016), *mandate recalled, stay granted*, 136 S. Ct. 2442, *petition for certiorari pending*, No. 16-273 ......................................................................... 15

*Glenn v. Brumby*,
  663 F.3d 1312 (11th Cir. 2011) ............................................................................. 9

*Granny Goose Foods v. Bhd. of Teamsters & Auto Truck Drivers*,
  415 U.S. 423 (1974) ............................................................................................ 20

*Harris County v. Carmax Auto Superstores Inc.*,
  177 F.3d 306 (5th Cir. 1999) ............................................................................... 20

*Holland v. Nat'l Mining Ass'n*,
    309 F.3d 808 (D.C. Cir. 2002) ........................................................... 19

*Hollon v. Mathis Indep. Sch. Dist.*,
    491 F.2d 92 (5th Cir. 1974) (per curiam) ............................................. 17

*Howe v. Yellowbook USA*,
    840 F. Supp. 2d 970 (N.D. Tex. 2011) ................................................ 22

*Los Angeles Haven Hospice, Inc. v. Sebelius*,
    638 F.3d 644 (9th Cir. 2011) ........................................................17, 19

*Lewis v. Casey*,
    518 U.S. 343 (1996) ........................................................................... 18

*Lion Health Servs. v. Sebelius*,
    635 F.3d 693 (5th Cir. 2011) .............................................................. 17

*Mach Mining, L.L.C. v. EEOC*,
    135 S. Ct. 1645 (2015) ....................................................................... 23

*Meinhold v. U.S. DOD*,
    34 F.3d 1469 (9th Cir. 1994) .............................................................. 17

*Peoples Nat'l Bank v. Office of the Comptroller of the Currency of the U.S.*,
    362 F.3d 333 (5th Cir. 2004) .............................................................. 11

*Price v. Choctaw Glove & Safety Co.*,
    459 F.3d 595 (5th Cir. 2006) .............................................................. 22

*Price Waterhouse v. Hopkins*,
    490 U.S. 228 (1989) ............................................................................. 9

*Privacy Matters v. U.S. Dep't of Educ.*,
    No. 0:16-cv-3015 (Sept. 7, 2016) ........................................................15

*Sanchez v. Standard Brands, Inc.*,
    431 F.2d 455 (5th Cir. 1970) .............................................................. 23

*Scott v. Schedler*,
    826 F.3d 207 (5th Cir. 2016) ................................................................ 5

*Smith v. City of Salem*,
    378 F.3d 566 (6th Cir. 2004) ................................................................ 9

*Texas v. United States*,
    787 F.3d 733 (5th Cir. 2015) ........................................................................... 17

*The Real Truth About Abortion, Inc. v. FEC*,
    681 F.3d 544 (4th Cir. 2012) ........................................................................... 17

*U.S. Dep't of Def. v. Meinhold*,
    114 S. Ct. 374 (1993) ...................................................................................... 17

*United States v. Cox*,
    342 F.2d 167 (5th Cir. 1965) ........................................................................... 14

*United States v. Mendoza*,
    464 U.S. 154 (1984) ........................................................................................ 18

*United States v. Nixon*,
    418 U.S. 683 (1974) ........................................................................................ 13

*Va. Soc'y for Human Life, Inc. v. FEC*,
    263 F.3d 379 (4th Cir. 2001) ..................................................................... 17, 18

## Constitutional Law

U.S. Const. art. II, § 3 ........................................................................................ 14

## Statutes

5 U.S.C. § 705 (2015) ........................................................................................ 18

28 U.S.C. § 516 (2012) ...................................................................................... 13

28 U.S.C. § 517 (2012) ................................................................................. 13, 15

28 U.S.C. § 518 (2012) ...................................................................................... 13

28 U.S.C. § 519 (2012) ...................................................................................... 13

29 U.S.C. § 651 (2012) ...................................................................................... 20

42 U.S.C. § 2000e-5(b) (2012) ............................................................. 13, 21, 22, 23

42 U.S.C. § 2000e-16 (2012) ............................................................................. 23

## Administrative and Executive Materials

29 C.F.R. § 1601.28(a)(2) (2013) ...................................................................... 23

29 C.F.R. Part 1614 (2010)............................................................................................24

34 C.F.R. § 106.33 (2013) .................................................................................... 7, 15

*Effect of an Appropriations Rider on the Auth. of the Justice Dep't to File a Sup. Ct. Amicus Brief*,
    14 Op. O.L.C. 13 (Feb. 5, 1990) ........................................................................ 14

## **Rules of Evidence and Procedure**

Fed. R. App. P. 29(a) ............................................................................................. 15

Fed. R. Civ. P. 65 ............................................................................................... 5, 20

## INTRODUCTION

Defendants move to clarify the scope of the Preliminary Injunction issued by this Court. Defendants respectfully disagree with the Court's conclusion that entry of a preliminary injunction was warranted in this case.  This filing, however, addresses only the scope of the Court's injunction.  As explained below, the terms of the order entered by the Court could be read to extend well beyond the appropriate scope of potential relief.  The Court should clarify that its order does not extend so broadly.

Based on Plaintiffs' motion for a preliminary injunction, as well as the August 12, 2016 hearing before this Court on Plaintiffs' motion, the preliminary injunction request is about access by transgender individuals to sex-segregated restrooms, locker rooms, and similar facilities in public educational settings.  The Court described this matter as "present[ing] the difficult issue of balancing the protection of students' rights and that of personal privacy when using school bathrooms, locker rooms, showers, and other intimate facilities, while ensuring that no student is unnecessarily marginalized while attending school."  Prelim. Inj. Order ("Order") at 1, ECF No. 58; *see also* Pls.' Notice of Pending Litigation ("Pls.' Notice") at 1, ECF No. 64 (describing the "subject" of the Preliminary Injunction as "whether federal law permits entities subject to Titles VII and IX to separate the sexes *in intimate facilities*" (emphasis added)).  However, the injunction could be read to sweep far more broadly than the Court may have intended, to encompass a broad range of federal programs, responsibilities, and activities that are not at issue in this litigation, that were not the subject of any allegations of harm by Plaintiffs or findings of harm by this Court in support of the Preliminary Injunction, and that are not within the appropriate scope of preliminary injunctive relief.

First, the Preliminary Injunction could be read to apply to protections unrelated to sex-segregated facilities in public schools, including those targeting discrimination based on race, color, national origin, disability, and sex discrimination that does not involve transgender individuals; bullying, harassment, and sexual violence directed at transgender individuals; and employment discrimination.  For example, a literal reading of the text of the Preliminary Injunction could prohibit Defendants, during the pendency of this litigation, from relying on six memoranda, fact sheets, and guidance documents (hereinafter collectively referred to as "Guidance Documents" or the "Guidelines," as the Court used that collective term, *see* Order at 3 n.4, for convenience), even to the extent that they concern legal questions not at issue here.  Consequently, if read broadly, the Preliminary Injunction would exceed the relief that could be connected to Plaintiffs' request for a preliminary injunction or that would be permitted under the Administrative Procedure Act (APA).

Second, the Preliminary Injunction could be read to prohibit Defendants from advancing certain legal arguments in other federal courts so long as this litigation is pending—even where the arguments do not rely on the Guidance Documents at issue in this lawsuit, and even where those arguments already have been accepted by those federal courts.  Such a prohibition would improperly interfere with the Executive Branch's authority to conduct litigation and with other courts' ability to consider and resolve the issues before them.

Third, the geographic scope of the Preliminary Injunction also could be read to exceed the proper scope of relief available to the plaintiffs in this case.  Although the Court stated that the "injunction should apply nationwide," Order at 36, the relief afforded seems to be limited to the plaintiff states, at least in some respects.  If the Preliminary Injunction were to be read more broadly, to encompass non-plaintiff states, it would run afoul of the Supreme Court's admonition

that an injunction "should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs," *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979), who have no cognizable interest in application of the Guidance in states other than their own.

Fourth, aspects of the Preliminary Injunction could be read to preclude certain federal agencies from discharging statutory obligations, in a manner that might extend beyond the issues presented in this case and impair the rights of third parties.

In each of these respects, the Preliminary Injunction is susceptible to more than one reading, and this Court's clarification could demonstrate that some or all of the sources of potential overbreadth identified here were not intended. Defendants therefore move for clarification of the scope of the Preliminary Injunction, to provide more "explicit notice of the precise conduct that is outlawed." *Alabama Nursing Home Ass'n v. Harris*, 617 F.2d 385, 387-88 (5th Cir. 1980).

Given the importance of the issues identified herein, Defendants request expedited briefing and consideration of this motion. Specifically, Defendants propose that Plaintiffs file a response to this motion for clarification by September 19, 2016, and that Defendants file a reply by September 23, 2016; and Defendants respectfully ask that the Court issue a ruling by October 3, 2016. The undersigned counsel for Defendants consulted with counsel for Plaintiffs, who represented that Plaintiffs do not oppose this expedited briefing schedule.

## BACKGROUND

Plaintiffs brought this lawsuit against the U.S. Departments of Education ("ED"), Justice ("DOJ"), and Labor ("DOL"), as well as the Equal Employment Opportunity Commission ("EEOC") and various agency officials in their official capacities (collectively, "Defendants"). ECF No. 1. The Complaint challenges several memoranda, fact sheets, and guidance documents reflecting Defendants' interpretation of the prohibition in Title VII and Title IX, and Title IX's implementing regulations, against discrimination "because of sex" or "on the basis of sex" as

3

applied to discrimination against transgender individuals because their gender identity is different from their sex assigned at birth.  Plaintiffs moved for a preliminary injunction, ECF No. 11, which the Court granted on August 21, 2016.

In its Preliminary Injunction, the Court enjoined Defendants during the pendency of this litigation from (1) "enforcing the Guidelines against Plaintiffs and their respective schools, school boards, and other public, educationally-based institutions," (2) "initiating, continuing, or concluding any investigation based on Defendants' interpretation that the definition of sex includes gender identity in Title IX's prohibition against discrimination on the basis of sex," and (3) "using the Guidelines or asserting the Guidelines carry weight in any litigation initiated following the date of this Order."  Order at 37.  The Court used the term "Guidelines" to refer collectively to six specific documents: (1) a 2010 Dear Colleague Letter issued by ED's Office for Civil Rights ("OCR") regarding harassment and bullying; (2) an April 2014 ED OCR Guidance Document regarding sexual violence; (3) a December 2014 memo issued by then Attorney General Eric Holder; (4) a June 2015 OSHA Best Practices guide; (5) a May 3, 2016 EEOC fact sheet; and (6) a May 13, 2016 Dear Colleague Letter on transgender students issued jointly by ED and DOJ.  *See id.* at 3 n.4.

The Court concluded that its Preliminary Injunction "should apply nationwide."  *Id.* at 36.  But it recognized that some states "do not want to be covered by this injunction," and said that the Preliminary Injunction "therefore only applies to those states whose laws" do not "authorize schools to define sex to include gender identity for purposes of providing separate restroom, locker room, showers, and other intimate facilities."  *Id.* at 36-37.  The Court also stated that "an injunction should not unnecessarily interfere with litigation currently pending before other federal courts on this subject."  *Id.* at 37.  It therefore directed the parties to "file a pleading describing"

4

such cases currently pending before other courts, so that the Court could "appropriately narrow the scope [of its Preliminary Injunction] if appropriate." *Id.* Defendants filed that pleading on August 30, 2016. *See* ECF No. 61.

## ARGUMENT

Although Defendants disagree that preliminary injunctive relief is warranted in this case, Defendants are implementing and complying with this Court's Preliminary Injunction—and will continue to do so—pending further action by this Court or on review. As currently drafted, however, the Preliminary Injunction could be read to implicate numerous federal programs, responsibilities, and activities that are not the subject of this litigation and were not within the scope of the preliminary injunctive relief requested by Plaintiffs. The Preliminary Injunction thus may have unintended effects on the ability of the Executive Branch to carry out the duties and obligations assigned to it by Congress in other settings, under other statutes, and outside the plaintiff states, and would undermine the agencies' ability to protect individuals from forms of discrimination that are not at issue in this case.

Because, as this Court has recognized, "[a] preliminary injunction 'is an extraordinary and drastic remedy,'" Order at 8, and because Fed. R. Civ. P. 65(d) requires a preliminary injunction to provide "explicit notice of the precise conduct that is outlawed," *Alabama Nursing Home Ass'n*, 617 F.2d at 387-88, Defendants file this motion in an effort to clarify the scope of the Court's Preliminary Injunction and thereby to facilitate the Defendants' understanding of and compliance with this Court's directives. *Cf. Scott v. Schedler*, 826 F.3d 207, 208 (5th Cir. 2016) (emphasizing need "to prevent uncertainty and confusion on the part of those faced with injunctive orders").

**A.      The Court should clarify that the Preliminary Injunction is limited to addressing the plaintiffs' allegations of harm.**

    1.      The Court should clarify that the Preliminary Injunction does not extend beyond the use of sex-segregated facilities by transgender individuals in public schools to affect programs addressing discrimination on the basis of race, national origin, or disability and other activities about which the plaintiffs have alleged no harm.

In seeking a preliminary injunction, Plaintiffs focused on the application of the Guidelines to the use of sex-segregated bathrooms, locker rooms, and similar facilities by transgender individuals in public schools and other public educational institutions.  The Court's order, however, could be read to limit Defendants' ability to enforce and interpret anti-discrimination statutes in areas distinct from the subject of Plaintiffs' request for relief.  Such a reading would exceed the Court's authority by giving relief beyond that necessary to address the alleged harms, in a manner that would interfere with the Executive Branch's obligation to enforce federal law. We respectfully ask the Court to clarify that the preliminary injunction applies only to transgender individuals' use of sex-segregated facilities in public educational institutions.

Plaintiffs asserted that the challenged Guidelines had "informed the nation's schools that they must immediately allow students to use the bathrooms, locker rooms and showers of the student's choosing, or risk losing Title IX-linked funding."  ECF No. 11 at 1.  And Plaintiffs' assertions of irreparable harm were limited to access to sex-segregated facilities by transgender persons.  Furthermore, with their preliminary injunction papers, Plaintiffs submitted evidence concerning enforcement actions taken by Defendants with respect to access by transgender persons to bathrooms, locker rooms, and similar facilities, and the restroom policies of the Harrold Independent School District and others allegedly at risk of enforcement action.  *See* Pls.' Notice at 1 (describing the "subject" of the Preliminary Injunction as limited to "intimate facilities").

This Court has similarly indicated that the Preliminary Injunction is limited to the application of the Guidelines to transgender issues relating to the use of intimate facilities in educational settings.  Indeed, the Court described it as "present[ing] the difficult issue of balancing the protection of students' rights and that of personal privacy when using school bathrooms, locker rooms, showers, and other intimate facilities, while ensuring that no student is unnecessarily marginalized while attending school."  Order at 1.  The Court explained that Plaintiffs challenge "Defendants' assertions that Title VII and Title IX require that all persons must be afforded the opportunity to have access to restrooms, locker rooms, showers, and other intimate facilities which match their gender identity rather than their biological sex."  *Id.* at 2-3.  In concluding that, for purposes of the Preliminary Injunction, Plaintiffs had demonstrated a likelihood of success on the merits, this Court relied principally on its reasoning that the text of an ED regulation governing sex-segregated facilities under Title IX, 34 C.F.R. § 106.33, unambiguously permitted separation of the sexes based on "biological and anatomical differences between male and female students as determined at their birth."  Order at 31.  And in weighing the remaining three preliminary-injunction factors, including irreparable harm, this Court similarly focused on Plaintiffs' asserted privacy, safety, and sovereignty interests in "differentia[ting] intimate facilities on the basis of biological sex."  *Id.* at 34.

As currently drafted, however, the Preliminary Injunction could be understood to implicate a broad array of matters beyond the use by transgender persons of sex-segregated bathrooms, locker rooms, and similar facilities, because some of the enjoined Guidance Documents address subjects beyond the application of Title VII and Title IX to the use of such facilities by transgender persons.  For instance, the 2010 ED OCR Dear Colleague Letter (entitled "Dear Colleague Letter: Harassment and Bullying") describes conduct generally—not limited to transgender individuals—

7

that constitutes harassment in violation of Title IX, as well as other federal statutes that were not the subject of this case—such as Title VI of the Civil Rights Act of 1964, Section 504 of the Rehabilitation Act of 1973, and Title II of the Americans with Disabilities Act of 1990—and schools' obligations to investigate and remedy student complaints of harassment and bullying. *See* ECF No. 6-1. Much of this document concerns harassment and bullying based on race, national origin, disability. *See id.* Similarly, the April 2014 ED Guidance (entitled "Questions and Answers on Title IX and Sexual Violence") addresses a wide array of topics related to sexual violence against students—again, not limited to transgender victims—at educational institutions receiving federal funds, including the definition of sexual violence, procedural requirements for handling complaints, confidentiality and reporting requirements, training, and prevention. *See* ECF No. 6-2. The greater part of these two documents does not specifically address transgender individuals, nor do the documents address the use of restrooms, locker rooms, and similar facilities by transgender individuals. Because Plaintiffs do not seek a preliminary injunction against the Guidelines to the extent that they address matters beyond the use of such facilities by transgender persons, Defendants ask this Court to clarify that the Preliminary Injunction does not enjoin Defendants' continued use of and reliance upon those portions of the Guidelines that address other subjects.

   2.  The Court should clarify that the Preliminary Injunction does not extend beyond the use of sex-segregated facilities to limit well-established prohibitions on sex stereotyping, bullying, and harassment directed towards transgender individuals.

Defendants further seek to clarify that, aside from the question of what portion of the Guidelines they may rely on, the Preliminary Injunction does not enjoin Defendants from protecting transgender individuals from discrimination in contexts other than the use of such sex-segregated facilities, such as discrimination against transgender individuals with respect to hiring,

firing, and other employment decisions; bullying, sexual, or other physical violence; or other forms of harassment and discrimination against transgender students in schools and transgender individuals in the workplace.  For example, ED's OCR often receives complaints about bullying or harassment of transgender individuals in schools.  And the EEOC investigates complaints of workplace discrimination against transgender individuals, such as firing, failure to hire or promote, harassment, and other employment practices.  These complaints often arise with respect to private employers—entities that were not the subject of Plaintiffs' motion for preliminary injunction or this Court's Order granting that motion, and with respect to which Plaintiffs have not alleged, let alone established, any irreparable harm.  None of these other forms of discrimination was at issue in the proceedings on Plaintiffs' preliminary injunction motion, and the Court should not issue a preliminary injunction that would prevent the agencies from protecting transgender individuals from such discrimination through investigation or enforcement.

Defendants also note that, in many instances, the agencies' applications of the law in contexts that do not involve sex-segregated facilities (such as bullying and harassment in schools) rely on the settled interpretation that Title VII and Title IX prohibit discrimination on the basis of sex-stereotyping—that is, discrimination based on a perception that an individual fails to conform to stereotypical notions of masculinity or femininity.  *See Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989); *EEOC v. Boh Bros. Constr. Co., L.L.C.*, 731 F.3d 444, 454 (5th Cir. 2013) (en banc) ("[N]umerous courts, including ours, have recognized that a plaintiff can satisfy Title VII's because-of-sex requirement with evidence of a plaintiff's perceived failure to conform to traditional gender stereotypes.").  For example, ED receives complaints regarding the harassment or bullying of transgender individuals in schools, and the EEOC receives charges regarding harassment and discrimination against transgender individuals in the workplace.  Often, the

harassment or discrimination is based on the transgender individual's failure to conform to typical notions of how a male or a female should look or behave. *See, e.g.*, *Glenn v. Brumby*, 663 F.3d 1312 (11th Cir. 2011); *Smith v. City of Salem*, 378 F.3d 566 (6th Cir. 2004). Defendants therefore request that the Court confirm that the injunction does not prohibit the agencies from investigating and enforcing the law to prevent discrimination based on unlawful sex-stereotyping against transgender persons.

> 3. The Court should clarify that the Preliminary Injunction, which arises out of claims related to public educational facilities under Title IX, does not affect employment matters arising under Title VII.

Although the Court's Preliminary Injunction makes passing references to Title VII, its overwhelming focus is on Title IX and its implementing regulations, and the issue of access to sex-segregated restrooms, locker rooms, and similar facilities by transgender individuals in schools. For example, the Background section of the Court's opinion on the Preliminary Injunction includes a subsection on Title IX, but not Title VII. *See* Order at 5. In a footnote, the Court explained that "where referenced, Title VII is used to help explain the legislative intent and purpose of Title IX because the two statutes are commonly linked." *Id.* at 9 n.7. In finding that Plaintiffs have standing, the Court focused on "various state constitutional and statutory codes which permit Plaintiffs to exercise control of their education premises and facilities." *Id.* at 10; *see also id.* at 10 n.8 (listing state laws). In determining that Plaintiffs are likely to succeed on the merits of their claim, the Court relied on its conclusion that Title IX's implementing regulations are unambiguous. *See id.* at 31-33. Furthermore, the Court's analysis of irreparable harm rested entirely on alleged inconsistencies between the aforementioned state statues regarding public educational institutions and Defendants' interpretation of Title IX and its implementing

regulations.  *See id.* at 33-35.[1]  Perhaps most importantly, the terms of the Preliminary Injunction

do not prohibit investigations under Title VII, as the Court enjoined Defendants "from initiating,

continuing, or concluding any investigation" based only on Defendants' interpretation of Title IX.

*Id.* at 37.  And the Preliminary Injunction does not prohibit Defendants from taking enforcement

actions with respect to Title VII, provided that such activities are not directed against "Plaintiffs

and their respective schools, school boards, and other public, educationally-based institutions."

Therefore, Defendants ask the Court to confirm that the Preliminary Injunction does not apply to

their interpretation of Title VII.[2]

> 4.  The Court should clarify that the Preliminary Injunction does not extend beyond
>     enjoining the alleged final agency action to limit other, future actions over which there
>     is no subject-matter jurisdiction.

The Preliminary Injunction could also be read as providing a remedy broader than would

be permitted under the APA.  In their motion for a preliminary injunction, Plaintiffs argued that

the issuance of the Guidelines violated the APA.  Of course, agency action is subject to challenge

under the APA only if it is final.  *See, e.g.*, *Peoples Nat'l Bank v. Office of the Comptroller of the

Currency of the United States*, 362 F.3d 333, 336 (5th Cir. 2004) ("If there is no 'final agency

action' a federal court lacks subject matter jurisdiction.").  The Court agreed with Plaintiffs'

argument, concluding, among other things, "that the Guidelines are final agency action under the

APA."  Order at 17.  The Court therefore enjoined Defendants "from enforcing *the Guidelines*

---

[1] The Court suggests that Defendants conceded that "the Guidelines conflict with Plaintiffs' policies and practices." Order at 34; *see also* Order at 35.  But Defendants made no such concession.  Instead, they stated that Plaintiffs identified "a small number of specific 'policies and practices' that *they claim* are in conflict with defendants' interpretation of Title IX."  Defs.' Opp'n to Pls.' App. for Prelim. Inj. at 8, ECF No. 40 (emphasis added).  In any event, this statement applied only to Title IX.  With respect to Title VII, Defendants correctly pointed out that "Plaintiffs do not identify a single action being taken against them as employers under Title VII.  Nor have they identified a single way that their conduct has changed as a result of the agencies' interpretation of Title VII."  *Id.*

[2] By its terms, the Preliminary Injunction already makes clear that it does not apply to *investigations* involving Defendants' interpretation of Title VII or to enforcement related to Title VII against parties other than the Plaintiffs.

against Plaintiffs and their respective schools, school boards, and other public, educationally-based institutions." Order at 37 (emphasis added). Thus, based on the explicit terms of the Preliminary Injunction, it appears that Defendants are not prohibited from enforcing their interpretation of the underlying statute against Plaintiffs and their public educational institutions, provided that they do not rely on the Guidelines.

However, the Court also enjoined Defendants "from initiating, continuing, or concluding any investigation *based on Defendants' interpretation* that the definition of sex includes gender identity in Title IX's prohibition against discrimination on the basis of sex." *Id.* (emphasis added). On its face, this prohibition would appear to prevent Defendants from engaging in such an investigation even if they do not rely on the Guidelines in any way. But as the Guidelines are the only even arguably final agency action at issue in this case, the Court cannot properly enjoin agency action that is not based on the Guidelines. Therefore, Defendants respectfully ask the Court to clarify that they are not enjoined from engaging in investigations and enforcement actions based on their interpretation of the law, as long as they do not rely on the Guidelines in so doing.

**B.     The Court should clarify that the Preliminary Injunction does not limit Defendants' ability to urge other courts to adopt their interpretation of Title VII and Title IX, including in courts that already have accepted that interpretation.**

The Preliminary Injunction enjoins Defendants "from using the Guidelines or asserting the Guidelines carry weight in any litigation initiated following the date of this Order." Order at 37. Defendants understand that they are preliminarily enjoined from relying upon the Guidance Documents "in any litigation initiated" after August 21, 2016. *Id.* Defendants request clarification that they are not, however, barred from articulating their interpretation of Title VII and Title IX as applied to transgender individuals in any federal court proceeding initiated after that date, so long as they do not rely on these documents or claim that they are entitled to deference or other legal

weight.[3]  To construe the Court's order more broadly—to prevent the government from asserting

arguments regarding its interpretation of Title VII and Title IX as applied to transgender

individuals—would exceed the scope of relief requested by Plaintiffs, *see* Tr. at 18-19 (requesting

an injunction under which Defendants could not "walk into a court or an administrative agency

. . . and argue that Title IX means what they say it means because of this letter or this guidance"),

conflict with statutes authorizing the Attorney General and defendant agencies to conduct

litigation, and raise separation-of-powers concerns.[4]  And it would have the remarkable effect of

precluding the federal government from urging courts to accept a position that already is the law

in their circuit.

Congress has vested the Attorney General with the authority to conduct litigation on behalf

of the United States.  *See* 28 U.S.C. § 516 ("Except as otherwise authorized by law, the conduct

of litigation in which the United States, an agency, or officer thereof is a party, or is interested,

and securing evidence therefor, is reserved to officers of the Department of Justice, under the

direction of the Attorney General."); *id.* § 517 ("The Solicitor General, or any officer of the

Department of Justice, may be sent by the Attorney General to any State or district in the United

States to attend to the interests of the United States in a suit pending in a court of the United States,

or in a court of a State, or to attend to any other interest of the United States."); *id.* § 518 (granting

authority to the Attorney General and the Solicitor General to direct the conduct and argument of

cases in the interest of the United States); *id.* § 519 ("[T]he Attorney General shall supervise all

---

[3] For reasons described in Section A, any order that prevented Defendants from asserting its interpretation of Title VII and Title IX in other litigation would exceed the proper scope of relief under the APA, because, *inter alia*, the Guidelines are the only even arguably final agency action in this case.

[4] Defendants believe that there are separation of powers concerns even if the Preliminary Injunction is read only to prevent the government from arguing that the Guidance Documents are entitled to deference in litigation initiated after August 21, 2016.  However, as the Preliminary Injunction unambiguously prohibits such activity, Defendants do not seek clarification on this point, although they respectfully disagree with the Court's decision and reserve the right to challenge this and other aspects of the Preliminary Injunction in any subsequent appeal.

litigation to which the United States, an agency, or officer thereof is a party."); *see also United States v. Nixon*, 418 U.S. 683, 694 (1974). Congress has also vested the EEOC with the authority to conduct certain litigation on its own behalf, 42 U.S.C. § 2000e-5(f)(1) ("[T]he Commission may bring a civil action against any respondent not a government, governmental agency, or political subdivision named in the charge"); *see EEOC v. Waffle House, Inc.*, 534 U.S. 279, 291–92 (2002) ("The statute clearly makes the EEOC the master of its own case and confers on the agency the authority to evaluate the strength of the public interest at stake. Absent textual support for a contrary view, it is the public agency's province—not that of the court—to determine whether public resources should be committed to the recovery of victim-specific relief. And if the agency makes that determination, the statutory text unambiguously authorizes it to proceed in a judicial forum.").

That authority necessarily extends to selecting legal arguments and, in the case of the Attorney General, not only defending federal agencies when they are sued, but also advocating for the interests of the United States in litigation in which the United States is not a party.[5] Moreover, under the constitutional separation of powers, this authority may be supervised only by the President. *United States v. Cox*, 342 F.2d 167, 171 (5th Cir. 1965) ("The Attorney General is the hand of the President in taking care that the laws of the United States in legal proceedings . . . be faithfully executed."); *see* U.S. Const. art. II, § 3 (the President "shall take Care that the Laws be faithfully executed"); *The Effect of an Appropriations Rider on the Authority of the Justice Department to File a Supreme Court Amicus Brief*, 14 Op. O.L.C. 13, 19 (1990) ("The filing of

---

[5] Certain agencies also have independent authority to conduct litigation at the administrative level. For example, the Solicitor of Labor may conduct litigation in DOL administrative tribunals to enforce Executive Order 11246, which, among other things, prohibits employment discrimination by federal contractors on the basis of race, color, religion, sex, sexual orientation, gender identity, or national origin. ED has similar authority to conduct litigation at the administrative level. Defendants ask the Court to confirm that the Order does not interfere with this authority.

briefs in courts of law through [the President's] subordinates—particularly as such filings may bear on the legality of action taken by Executive departments or agencies—is integral to the discharge of his constitutional duty to see that the laws are faithfully executed."). Thus, while the Preliminary Injunction enjoins reliance on the Guidance Documents themselves, Defendants ask the Court to confirm that it does not dictate which statutory and regulatory arguments the Attorney General and the EEOC may or may not assert in litigation before other courts.[6]

Similarly, Congress has authorized DOJ and the EEOC to file amicus briefs and statements of interest in cases initiated by private parties that raise issues of federal concern. *See* 28 U.S.C. § 517; *see also* Fed. R. App. P. 29(a). It is Defendants' understanding that the Preliminary Injunction does not prohibit the filing of amicus briefs and statements of interest setting forth their interpretation of Title VII and Title IX in any private litigation, regardless of when the case was filed.

Finally, some federal courts of appeals and federal district courts have disagreed with certain conclusions in the Court's Preliminary Injunction. *See, e.g.*, *G.G. ex rel. Grimm v. Gloucester Cty. Sch. Bd.*, 822 F.3d 709, 720-21, 723 (4th Cir. 2016), *mandate recalled, stay granted*, 136 S. Ct. 2442, *petition for certiorari pending*, No. 16-273 (concluding that 34 C.F.R. § 106.33 is ambiguous, and that courts must give "controlling weight" to ED's interpretation that "[w]hen a school elects to separate or treat students differently on the basis of sex . . . a school generally must treat transgender students consistent with their gender identity"); Mem. Op., Order & Prelim. Inj., *Carcaño v. McCrory*, No. 1:16-cv-236, ECF No. 127 (M.D.N.C. Aug. 26, 2016) (accepting Defendants' interpretation of Title IX and its implementing regulations as prohibiting

---

[6] For example, the government was recently sued in the District of Minnesota. *See Privacy Matters v. U.S. Dep't of Educ.*, No. 0:16-cv-3015 (Sept. 7, 2016). Read broadly, the Preliminary Injunction could be understood to prevent the government from defending itself in that case, which involves a school district in a non-plaintiff state.

discrimination against transgender persons because their gender identity is different from their sex assigned at birth and thereby requiring that individuals have access to public restrooms and other sex-segregated facilities consistent with their gender identity, and therefore enjoining a contrary state law); *id.* at 35 n.22 (concluding that this Court's order, "a district court opinion from outside the Fourth Circuit," does not affect *G.G.*'s status as controlling law).   Where a federal court of appeals has ruled in favor of the government's legal interpretation—or where it does so while the Preliminary Injunction remains in effect—Defendants respectfully request that the Court confirm that the Preliminary Injunction does not prohibit them from relying on the ruling of the court of appeals within that circuit.   Similarly, Defendants respectfully ask this Court to clarify that they are not enjoined from interpreting and enforcing Title VII and Title IX in accordance with the rulings of other federal district courts as to parties in litigation before those courts and on review therefrom.

**C.     The Court should clarify that the Preliminary Injunction does not limit the enforcement of anti-discrimination statutes outside of the plaintiff states.**

In their opposition to Plaintiffs' motion for a preliminary injunction, Defendants explained their view that a nationwide injunction would not be appropriate.   *See* Defs.' Opp'n to Pls.' App. for Prelim. Inj. at 28-30, ECF No. 40.   Nonetheless, the Court found that "this injunction should apply nationwide."   Order at 36.   However, the Court also stated that the Preliminary Injunction "only applies to those states whose laws direct separation."   *Id.* at 37.   And the Court enjoined Defendants from "enforcing the Guidelines" with respect only to "Plaintiffs and their respective schools, school boards, and other public, educationally-based institutions."   *Id.*   Thus, Defendants

ask the Court to confirm that they are enjoined from "enforcing the Guidelines" and otherwise applying their understanding of the law only as to the plaintiff states.[7]

A broader reading of the Preliminary Injunction—one that extended the scope to non-plaintiff states—would not only be inconsistent with the Court's directive that Defendants are enjoined from "enforcing the Guidelines" only as to Plaintiffs and their public educational institutions, but would also run afoul of the Supreme Court's admonition that "injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Califano*, 442 U.S. at 702; *see also Lion Health Servs., Inc. v. Sebelius*, 635 F.3d 693, 703 (5th Cir. 2011) (same). "This rule applies with special force where there is no class certification." *Los Angeles Haven Hospice, Inc. v. Sebelius*, 638 F.3d 644, 664 (9th Cir. 2011). As a general matter, appellate courts have reversed the entry of nationwide injunctions by district courts where, as here, such breadth is not necessary to afford relief to the specific plaintiffs. *See id.* at 664-65; *Va. Society for Human Life, Inc. v. FEC*, 263 F.3d 379, 393-94 (4th Cir. 2001), *overruled on other grounds by The Real Truth About Abortion, Inc. v. FEC*, 681 F.3d 544 (4th Cir. 2012); *Meinhold v. U.S. Dep't of Defense*, 34 F.3d 1469, 1480 (9th Cir. 1994); *see also U.S. Dep't of Defense v. Meinhold*, 114 S. Ct. 374 (1993) (granting stay pending appeal of nationwide scope of injunction); *Hollon v. Mathis Indep. Sch. Dist.*, 491 F.2d 92, 93 (5th Cir. 1974) (per curiam) (vacating preliminary injunction as overbroad because "[i]n this case, which is not a class action, the injunction against the School District from enforcing its regulation against anyone other than [plaintiff] reaches further than is necessary to serve [the] purpose" of preserving the status quo among the parties). While a nationwide injunction may be "appropriate if necessary to afford relief

---

[7] Defendants understand the Court, in describing the scope of the Preliminary Injunction as "nationwide," to have rejected the argument that relief should be limited to the Fifth Circuit. Therefore, Defendants only seek to clarify that the scope of the Preliminary Injunction is limited to the plaintiff states.

to the prevailing party," *Va. Society for Human Life*, 263 F.3d at 393, that prerequisite is certainly not satisfied here, where the plaintiff states have no interest in the enforcement of the law—or lack thereof—outside their borders.  *See id.* ("In this case VSHL is the only plaintiff.  An injunction covering VSHL alone adequately protects it from the feared prosecution."); *Texas v. United States*, 787 F.3d 733, 769 (5th Cir. 2015) (upholding issuance of nationwide injunction in part because of "a substantial likelihood that a partial injunction would be ineffective" in providing complete relief to the plaintiff states due to migration of individuals across state lines).

An injunction extending to non-plaintiff states would also exceed the scope of any injury established by Plaintiffs, and would thus raise Article III concerns.  *See Flores v. Huppenthal*, 789 F.3d 994, 1005-06 (9th Cir. 2015); *see also Lewis v. Casey*, 518 U.S. 343, 357 (1996) (the scope of an injunction "must of course be limited to the inadequacy that produced the injury in fact that the plaintiff has established"); 5 U.S.C. § 705 ("On such conditions as may be required and *to the extent necessary to prevent irreparable injury*, the reviewing court … may issue all necessary and appropriate process … to preserve status or rights pending conclusion of the review proceedings. (emphasis added)).  Plaintiffs cannot plausibly allege that they are injured when Defendants enforce the law in non-plaintiff states.  Furthermore, the Court's conclusion that Plaintiffs had established an injury-in-fact and irreparable harm was premised on alleged conflicts between Defendants' interpretations of the law and certain laws of the plaintiff states.  *See* Order at 10-11 n.8, 34-35.  There has been no showing of any kind of injury or harm to non-plaintiff states. Indeed, 12 states and the District of Columbia filed a brief supporting Defendants' position and explicitly disavowing any allegations that they are harmed by Defendants' interpretation of the law.  *See* States' Amicus Curiae Br. in Opp'n to Pls.' App. for Prelim. Inj., ECF No. 34.  Thus, a preliminary injunction that prevents Defendants from "enforcing the Guidelines" or conducting

18

investigations in non-plaintiff states would be far broader than necessary to remedy any injury or irreparable harm to Plaintiffs.

Finally, a nationwide injunction could prevent other district courts and courts of appeals from weighing in on the legal issues presented in this case, thereby "substantially thwart[ing] the development of important questions of law by freezing the first final decision rendered on a particular legal issue." *United States v. Mendoza*, 464 U.S. 154, 160 (1984); *see also Va. Society for Human Life*, 263 F.3d at 393.  This factor is particularly important where, as here, "a regulatory challenge involves important or difficult questions of law, which might benefit from development in different factual contexts and in multiple decisions by the various courts of appeals." *Los Angeles Haven Hospice*, 638 F.3d at 664.  As the D.C. Circuit has cautioned, "[a]llowing one circuit's statutory interpretation to foreclose . . . review of the question in another circuit," would "squelch the circuit disagreements that can lead to Supreme Court review." *Holland v. Nat'l Mining Ass'n*, 309 F.3d 808, 815 (D.C. Cir. 2002).  Although the Court has indicated that it does not intend the Preliminary Injunction to "unnecessarily interfere with litigation currently pending before other federal courts on this subject," Order at 37, were the injunction to be understood to prohibit Defendants from applying their understanding of the law in non-plaintiff states, it would risk stunting the development of the case law by preventing new cases from arising in other circuits.

Therefore, for all of these reasons, Defendants respectfully ask that the Court confirm that the geographic scope of the Preliminary Injunction is limited to the plaintiff states, and does not extend to actions taken by Defendants with respect to non-plaintiff states.

**D.     The Court should clarify that the Preliminary Injunction does not enjoin any activities or programs of the Department of Labor.**

While DOL and the Secretary of Labor (in his official capacity) were named as defendants in this case, Plaintiffs' only challenge to DOL's activities was based on the OSHA Best Practices Guide.  *See* ECF No. 6-4.  In their Amended Complaint, Plaintiffs described DOL as "the federal agency responsible for supervising the formulation, issuance, and enforcement of rules, regulations, policies, and forms by the Occupational Safety and Health Administration," ECF No. 6 ¶ 16, and described the Secretary of Labor as the individual "authorized to issue, amend, and rescind the rules, regulations, policies, and forms of OSHA," *id.* ¶ 17.  Plaintiffs made no mention of any other DOL activities or programs, and certainly did not even purport to establish irreparable harm stemming from any DOL actions.  Furthermore, although OSHA interprets and enforces the Occupational Safety and Health Act, 29 U.S.C. § 651 *et seq.*, it does not interpret or enforce Title VII or Title IX, and neither the Occupational Safety and Health Act nor OSHA's standards were briefed or argued in this case.  Defendants therefore respectfully seek clarification that the Preliminary Injunction does not bar OSHA from any interpretation of, or reliance on, the Occupational Safety and Health Act or its standards.

Moreover, were the Preliminary Injunction to enjoin other DOL activities beyond enforcement of the Occupational Safety and Health Act, it would violate the precept that a "preliminary injunction is only available upon adequate notice and a fair opportunity to oppose it." *Harris Cty., Tex. v. CarMax Auto Superstores Inc.*, 177 F.3d 306, 326 (5th Cir. 1999); *see also* Fed. R. Civ. Pro. 65(a)(1); *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cty.*, 415 U.S. 423, 433 n. 7 (1974).  Here, there was no notice that DOL programs outside of OSHA were at issue.  In addition, a preliminary injunction cannot exceed the scope of the complaint.  *See, e.g,. Church of Holy Light of Queen v. Holder*, 443 F. App'x 302,

303 (9th Cir. 2011) ("The injunction is therefore overly broad because it reaches beyond the scope of the complaint and enjoins government regulations that were explicitly never challenged or litigated."). Therefore, Defendants request that the Court clarify that the Preliminary Injunction does not apply to any activities or programs of DOL; alternatively, Defendants seek clarification that the injunction does not apply to any DOL activities or programs outside of OSHA.

**E.     The Court should clarify that the Preliminary Injunction does not enjoin the EEOC from fulfilling statutory duties necessary to protect the rights of individuals alleging discrimination.**

As explained previously, Defendants do not understand the Preliminary Injunction to extend beyond access to sex-segregated facilities by transgender individuals in educational settings, but are seeking clarification from the Court on this point. As previously discussed, Defendants do not read the Preliminary Injunction to prohibit investigations under Title VII, and it would appear that the Preliminary Injunction does not prohibit Defendants—and the EEOC in particular—from taking enforcement actions related to Title VII, provided that such activities are not directed against "Plaintiffs and their respective schools, school boards, and other public, educationally-based institutions," *id.*[8] Nonetheless, out of an abundance of caution, Defendants seek to confirm that the EEOC is not enjoined from conducting its investigatory and enforcement work as required by statute and to protect the rights of individuals alleging discrimination.

Title VII created the EEOC and the administrative charge process to protect the substantive rights of individuals and provide a method for resolving employment discrimination claims without litigation. *See* 42 U.S.C. § 2000e-5(b). Further, the EEOC serves as a gatekeeper for an

---

[8] The EEOC does not have the authority to file an enforcement action against a state or local public employer directly. *See* Defs.' Opp'n to Pls.' App. for Prelim. Inj. at 3 n.1, ECF No. 40. Instead, the agency investigates state or local public employers for potential Title VII violations, and then refers any case for which it finds reasonable cause to believe a Title VII violation occurred to the Attorney General, who decides whether to bring any enforcement action. *See* 42 U.S.C. § 2000e-5(f)(1).

individual's federal complaints of employment discrimination, because some of its actions in the administrative charge process have been deemed by the courts to be prerequisites to suit for charging parties.   Therefore, nonperformance of these actions by the EEOC could result in depriving individuals of their right to pursue relief on their own behalf in court.   Title VII expresses each of these requirements in mandatory, not permissive, language, and sets forth related time limits.   *See, e.g., Equal Employment Opportunity Comm'n v. Bass Pro Outdoor World, L.L.C.*, No. 15-20078, 2016 WL 3397696, at \*8 (5th Cir. June 17, 2016).

For example, an individual alleging non-federal sector discrimination under Title VII, including sex discrimination, must file a charge with the EEOC within 180 or 300 days of the occurrence of the alleged unlawful practice.   *See* 42 U.S.C. § 2000e-5(e)(1).   The EEOC must be able to conduct intake for such charges in order to preserve the statutory rights of individuals who allege that they have been subject to discrimination.   Failure to accept these charges could prevent charging parties from filing a charge within the statutory time frame, which may result in a loss of these individuals' right to file a private suit alleging discrimination under Title VII.   *See Price v. Choctaw Glove & Safety Co.*, 459 F.3d 595, 598 & n.7  (5th Cir. 2006) ("In order to file suit under Title VII, a plaintiff first must file a charge with the EEOC within 180 [or 300] days of the alleged discriminatory act."); *see also Howe v. Yellowbook, USA*, 840 F. Supp. 2d 970, 976 (N.D. Tex. 2011).   A delay in accepting charges could also limit a charging party's right to recovery, since back pay is available for only two years before the charge is filed.   *See* 42 U.S.C. § 2000e-5(g)(1).

Further, the EEOC must be able to conduct intake interviews of potential charging parties who may wish to file charges so the agency can determine the substance of the individual's allegations of discrimination, counsel individuals about their rights under Title VII, determine whether a discriminatory basis is alleged, and accurately record the charge of discrimination.   The

EEOC also has a statutory duty to notify respondents of the existence of any charge filed against them within 10 days of the filing of that charge, *see id.* § 2000e-5(b), and the agency must continue to comply with that statutory mandate.  Failure to notify respondents of a charge may lead to the loss of evidence critical to an investigation, resulting in dismissal of subsequent litigation.  *See EEOC v. AirGuide Corp.*, 1978 WL 134 (S.D. Fla. 1978); *see also EEOC v. Burlington N., Inc.,* 644 F.2d 717 (8th Cir. 1981) (finding that if an employer raises as a defense that the EEOC failed to serve a charge within ten days of its filing, the court will weigh the EEOC's reasons and the prejudice it caused).

Title VII also imposes on the EEOC a statutory duty to investigate all charges of discrimination, including sex discrimination, filed with the agency and, should EEOC's investigation lead to a determination that there is reasonable cause to believe discrimination occurred, to attempt to secure voluntary compliance with the law through conciliation.  *See* 42 U.S.C. § 2000e-5(b); *see also, e.g., Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970); *Mach Mining, LLC v. EEOC*, 135 S. Ct. 1645, 1651 (2015).  If the EEOC's administrative process is ongoing 180 days after the filing of a charge with the EEOC, a charging party has the right to request a notice of right to sue, which provides the charging party with the right to file suit in federal court based on his or her charges.  The EEOC has a statutory duty to issue such a notice, if requested, *see* 42 U.S.C. § 2000e-5(f)(1); *see also* 29 C.F.R. § 1601.28(a)(2), and such issuance is not an imprimatur that EEOC believes discrimination has occurred.[9]

Given these statutory mandates and related deadlines—as well as the terms of the "investigations" portion of the Preliminary Injunction, which is limited to investigations pursuant

---

[9] In charges involving state or local governments as respondents, the EEOC cannot issue the notice of right to sue or file suit; the Department of Justice determines whether to file suit and issues the notice of right to sue for those charges. *See* 42 USC §2000e-5(f)(1).

to Title IX—Defendants ask that the Court confirm their understanding that the Preliminary Injunction does not prohibit the EEOC from undertaking these activities in instances where a charging party alleges discrimination based on sex because a transgender person's gender identity is different from their sex assigned at birth.

Finally, the EEOC oversees the Executive Branch's internal equal employment opportunity (EEO) process.  Pursuant to that process, each executive branch agency subject to section 717 of Title VII, 42 U.S.C. § 2000e-16, including the EEOC itself and the other defendant agencies, is responsible for investigating EEO complaints filed by its employees or applicants challenging the agency's actions, including allegations of sex discrimination.  *See generally* 29 C.F.R. Part 1614. The complaint may be resolved by settlement or mediation at any time during the investigation. Upon conclusion of the investigation, the complainant may then request either a final agency decision from the respondent federal agency or a hearing before an EEOC Administrative Judge, who may issue a decision.  If the respondent agency or complainant is dissatisfied with the Administrative Judge's decision, either or both may appeal to the EEOC's Office of Federal Operations.  Some of these complaints include allegations of discrimination against transgender individuals.

Plaintiffs' complaint does not challenge the EEOC's federal sector process.  Indeed, Plaintiffs would have no standing to do so—and could not possibly allege that they suffer any irreparable harm—because that process applies only to departments and agencies of the federal government and their employees and prospective employees.  Accordingly, it is Defendants' understanding that the Preliminary Injunction does not affect the Executive Branch's internal EEO process and does not prohibit defendant agencies from resolving/investigating—or the EEOC from adjudicating—these administrative EEO complaints filed against them.

## CONCLUSION

Defendants respectfully request that the Court issue an order clarifying the scope of the

Preliminary Injunction with respect to the issues raised in this motion by October 3, 2016.

Dated: September 12, 2016                  Respectfully submitted,

                                           BENJAMIN C. MIZER
                                           Principal Deputy Assistant Attorney General

                                           JENNIFER D. RICKETTS
                                           Director, Federal Programs Branch

                                           SHEILA M. LIEBER
                                           Deputy Director, Federal Programs Branch

                                           */s/ Benjamin L. Berwick*
                                           BENJAMIN L. BERWICK (MA Bar No. 679207)
                                           JAMES BICKFORD (NY Bar No. 5163498)
                                           Trial Attorney, U.S. Department of Justice
                                           Civil Division, Federal Programs Branch
                                           1 Courthouse Way, Suite 9200
                                           Boston, MA 02210
                                           Telephone: (617) 748-3129
                                           Facsimile: (617) 748-3965
                                           Email: Benjamin.L.Berwick@usdoj.gov

                                           *Counsel for Defendants*

## CERTIFICATE OF CONFERENCE

I hereby certify that on September 8 and September 12, 2016, the undersigned counsel consulted with counsel for plaintiffs, Austin R. Nimocks, who represented that plaintiffs do not oppose the proposed expedited briefing schedule for this motion.

*/s/ Benjamin L. Berwick*
Benjamin L. Berwick

## CERTIFICATE OF SERVICE

I hereby certify that on September 12, 2016, a copy of the foregoing Motion for Clarification of the Court's Preliminary Injunction Order and Unopposed Request for Expedited Consideration was filed electronically via the Court's ECF system, which effects service upon counsel of record.

*/s/ Benjamin L. Berwick*
Benjamin L. Berwick