**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION**

| | |
|---|---|
| **STATE OF TEXAS**, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 7:16-cv-54-O |
| ) | |
| **UNITED STATES OF AMERICA**, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR CLARIFICATION
OF THE COURT'S PRELIMINARY INJUNCTION ORDER**

**INTRODUCTION**

Plaintiffs' response confirms the need to clarify the scope of the Court's Preliminary Injunction. Despite their rhetoric, Plaintiffs agree with much of the relief sought in the Defendants' Motion for Clarification. And where Plaintiffs disagree, it is based on a breathtaking, and wholly unsupported, view of the scope of the Preliminary Injunction.

Plaintiffs concede that the Preliminary Injunction is limited to the topic of "putting the sexes together in intimate areas," Pls.' Resp. to Defs.' Mot. for Clarification ("Pls.' Resp.") at 3, ECF No. 73—that is, access by transgender individuals to restrooms, locker rooms, and similar facilities in accordance with their gender identity—and agree that it does not preclude Defendants from enforcing non-discrimination laws, conducting investigations, and making arguments in litigation where access to "intimate areas" is not at issue. Plaintiffs also agree that the Preliminary Injunction should not interfere with many activities of the Equal Employment Opportunity Commission (EEOC). *Id.* at 6.

Where Plaintiffs do actually oppose clarification, they largely fail to address the arguments raised by Defendants and provide no support for their sweeping contentions. Plaintiffs do not explain how they are injured or harmed by Defendants' activities in non-plaintiff states, by Defendants' enforcement of Title VII against private parties, or by any activities of the Department of Labor (DOL). Nor do Plaintiffs explain how the Preliminary Injunction could permissibly extend beyond the Guidelines—the only allegedly final agency action that Plaintiffs have identified in their application for a preliminary injunction—to encompass Defendants' underlying interpretation of the relevant statutory and regulatory provisions. There is no basis for Plaintiffs' assertion that the Court can somehow enjoin "unknown" regulatory "dark matter," *id.* at 1 n.1, and wholly unidentified "clandestine rule[s]," *id.* at 8, that "lurk[] somewhere beneath," *id.* at 2. Finally, Plaintiffs have no response to Defendants' arguments that the Preliminary Injunction cannot be read to prohibit Defendants from litigating, or filing statements of interest or amicus briefs regarding, the important issues raised in this case in litigation before other federal courts, unless Plaintiffs are parties to the other litigation and it was initiated after the issuance of the

1

Preliminary Injunction. Were the Preliminary Injunction to reach as far as Plaintiffs imagine, it would dramatically exceed the authority of this Court.

## ARGUMENT

### I. Plaintiffs implicitly concede that the Preliminary Injunction should be clarified

Although Plaintiffs urge the Court to deny Defendants' Motion for Clarification, *see* Pls.' Resp. at 1, they appear to concede that clarification would in fact be appropriate in some respects. Most importantly, Plaintiffs recognize that the scope of the Preliminary Injunction is limited to access by transgender individuals to restrooms, locker rooms, and similar facilities. *See, e.g.*, *id.* at 3 (describing the scope of the injunction as limited to "intimate areas"); *id.* at 3-4 ("Plaintiffs' application for preliminary injunction . . . turns on access to, and the expectations of privacy in, intimate areas."); *see also* Pls.' Notice of Pending Litigation at 1, ECF No. 64 (describing the "subject" of the Preliminary Injunction as "whether federal law permits entities subject to Titles VII and IX to separate the sexes in intimate facilities").[1]

Plaintiffs therefore appear to agree that the Preliminary Injunction should not be read to prevent the defendant agencies from enforcing non-discrimination laws in circumstances that do not involve access to "intimate areas"—such as harassment and bullying based on race, national origin, disability, and sex; sexual violence against students; and hiring, firing, and other employment decisions; as well as instances of sex discrimination against transgender individuals that do not involve access to sex-segregated facilities, *see* Defs.' Mot. for Clarification ("Defs.' Mot.") at 7-9, ECF No. 65—even if those circumstances are also analyzed in the enjoined Guidelines. *See* Pls.' Resp. at 13 ("The injunction does not prevent Defendants from relying on statutes or other actual law or validly adopted regulations to undertake lawful anti-discrimination enforcement actions."). Thus, the Court should clarify that the Preliminary Injunction does not prohibit Defendants from protecting all individuals—including transgender individuals—from

---

[1] Plaintiffs' characterization of Defendants' position as requiring "that all intimate areas are open to everyone," Pls.' Resp. at 1, is inaccurate. Defendants' actual position is that all women—including transgender women—should be permitted to use facilities that are designated for women, and that all men—including transgender men—should be permitted to use facilities that are designated for men. Nothing in Defendants' Guidelines or elsewhere would require that men have access to women's facilities, or vice versa.

such discrimination through investigations and enforcement of relevant anti-discrimination laws in circumstances that do not involve access to bathrooms, locker rooms, and similar facilities.[2]

In their Motion for Clarification, Defendants also explained that the Preliminary Injunction should not be understood to prevent the EEOC from engaging in various activities necessary to protect the rights of individuals alleging discrimination. *See* Defs.' Mot. at 21-24. Plaintiffs agree on this count as well. *See* Pls.' Resp. at 6. And Plaintiffs do not offer any response to Defendants' understanding that the injunction does not disrupt the federal sector equal employment opportunity (EEO) process, *see* Defs.' Mot. at 24, and thus have conceded this point. Therefore, the Court should confirm that the Preliminary Injunction does not interfere with these EEOC activities to protect the rights of individuals alleging discrimination or with the federal sector EEO process.

## II. The Preliminary Injunction should not be read to apply where there has been no showing of harm to Plaintiffs

"[I]njunctive relief should be no more burdensome to the defendant than necessary to provide complete relief *to the plaintiffs*." *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979)

---

[2] Plaintiffs insist that, while Defendants should not be prohibited from enforcing non-discrimination laws in contexts that do not involve access to sex-segregated facilities by transgender individuals, Defendants should be prohibited from relying on the Guidelines while doing so. *See* Pls.' Resp. at 12-16. As justification for that assertion, Plaintiffs contend that there is no "actual *need* for its enjoined guidances to survive" because the Guidelines have no independent legal effect and Defendants may continue to "rely[] on statutes or other actual law." *Id.* at 12-13. Indeed, those assertions reinforce the correctness of Defendants' arguments in opposing Plaintiffs' application for a preliminary injunction: the Guidelines themselves do not have the force of law, but instead only explain the agencies' interpretation of the underlying non-discrimination statutes and regulations, meaning that the Guidelines have no independent legal effect and thus could cause no irreparable harm. Furthermore, Plaintiffs do not even claim to suffer an injury from those portions of the Guidelines that are unrelated to the subject of the Preliminary Injunction. As a result, there would be no basis for the Court to preliminarily enjoin those aspects of the Guidelines. Plaintiffs' argument is really one of severability. Specifically, Plaintiffs contend that, although the Court has invalidated only a portion of some of the Guidelines, they are invalid in their entirety because of "the taint of their illegality." Pls' Resp. at 12. But "[w]hether an administrative agency's order or regulation is severable, permitting a court to affirm it in part and reverse it in part, depends on the issuing agency's intent." *North Carolina v. FERC*, 730 F.2d 790, 795-96 (D.C. Cir. 1984) (Scalia, J.); *accord Davis Cnty. Solid Waste Mgmt. v. EPA*, 108 F.3d 1454, 1459 (D.C. Cir. 1997). Unchallenged portions of a regulation must be invalidated only "[w]here there is substantial doubt that the agency would have adopted the same disposition regarding the unchallenged portion if the challenged portion were subtracted." *North Carolina*, 730 F.2d at 796; *accord Davis Cnty.*, 108 F.3d at 1459; *Bell Atl. Tel. Co. v. FCC*, 24 F.3d 1441, 1447 (D.C. Cir. 1994). Here, there is no doubt that the agency would have intended the provisions of the Guidelines related to other forms of discrimination to remain in effect even if their application to transgender persons' use of sex-segregated facilities was invalidated. For example, there is no reason that the agency would have intended its discussion of schools' legal obligation to address bullying and harassment based on race, national origin, or disability to rise or fall on the question of whether discrimination based on gender identity is sex-based discrimination under Title IX. *See* ECF No. 6-1. Plaintiffs have failed to create any doubt on this score, let alone "substantial doubt."

3

(emphasis added); *see also Lion Health Servs., Inc. v. Sebelius*, 635 F.3d 693, 703 (5th Cir. 2011) (same). The purpose of a preliminary injunction is to preserve the status quo *between the parties* until the case can be adjudicated on the merits, *see, e.g.*, *Wenner v. Tex. Lottery Comm'n*, 123 F.3d 321, 326 (5th Cir. 1997); it is not a vehicle for shutting down entirely government regulatory and enforcement activity in a particular area. Nonetheless, in several respects, Plaintiffs urge the Court to ignore these limitations on its authority, and to adopt a reading of the Preliminary Injunction that is inconsistent with its text and far broader than necessary to remedy any injury even arguably alleged by Plaintiffs.

First, Plaintiffs contend that all aspects of the Preliminary Injunction should apply nationwide, including to non-plaintiff states. *See* Pls.' Resp. at 9-10. But, as Defendants have explained, such a broad geographic scope is flatly inconsistent with the Preliminary Injunction's text, which enjoins enforcement of the Guidelines only with respect to "Plaintiffs and their respective schools, school boards, and other public, educationally-based institutions." Order at 37.[3] Plaintiffs' request to expand the injunction is also unnecessary to remedy any injury to Plaintiffs and would stunt the development of case law in this important and emerging area. *See* Defs.' Mot. at 16-19. The plaintiff states have no interest in the investigation and enforcement of Defendants' interpretation of the law outside their borders, where they do not operate schools. They suffer no injury when Defendants enforce their understanding of the law in non-plaintiff states. Nor has there been any showing of injury or harm to non-plaintiff states (which plaintiffs would lack standing to assert in any event). To the contrary, 12 states and the District of Columbia have explicitly disavowed any such harm, and made clear that they agree with and support Defendants' interpretation in this case. *See* States' Amicus Curiae Br. in Opp'n to Pls.' App. For Prelim. Inj., ECF No. 34.

---

[3] Plaintiffs' insistence that this language serves only to "emphasize[] the absence of a temporal restriction regarding the Plaintiff States," finds no support in the actual text of the Preliminary Injunction. This argument assumes that the Court also enjoined enforcement of the Guidelines against non-plaintiff states, but declined to say so explicitly.

Although Defendants raised all of these points in their Motion for Clarification, Plaintiffs have entirely failed to respond to them. Instead, they state that "Defendants are federal administrators and agencies, with footings in every state and territory." Pls.' Resp. at 10. But that truism is no answer to the arguments raised by Defendants. Plaintiffs identify no reason that the Preliminary Injunction should extend to non-plaintiff states to provide *Plaintiffs* with complete relief, or to remedy an injury that *Plaintiffs* suffer. As a result, Defendants respectfully ask the Court to clarify that the Preliminary Injunction extends only to the plaintiff states, and does not apply to any action taken by Defendants with respect to non-plaintiff states.

Second, Plaintiffs also largely fail to address Defendants' request that the Court confirm that the Preliminary Injunction does not prohibit enforcement of Title VII against private entities, wherever they are located. *See* Defs.' Mot. at 10-11. In particular, Plaintiffs offer no explanation as to why the Preliminary Injunction should be understood to restrict, for example, the EEOC's enforcement of Title VII in cases involving private litigants. *See id.* at 6. Plaintiffs have not identified—nor has the Court found—any injury or harm that Plaintiffs would suffer as a result of enforcement against private entities. Such a restriction would not be "modest" or "reasonably narrow," as Plaintiffs' contend, *id.*, because it is not justified by Plaintiffs' allegations nor necessary to afford Plaintiffs with complete relief. Therefore, the Court should clarify that the Preliminary Injunction does not apply to the enforcement of Title VII against private entities.[4]

Third, for similar reasons, Plaintiffs have failed to effectively refute Defendants' argument that the Court should clarify that the Preliminary Injunction does not enjoin any activities of DOL.

---

[4] As Defendants pointed out in their motion, several aspects of the Court's opinion strongly suggest that the Preliminary Injunction should be understood as entirely limited to Title IX, including the fact that the Court's finding of injury and irreparable harm rested on alleged inconsistencies between certain state statutes regarding public educational institutions and Defendants' interpretation of Title IX and its implementing regulations. Defendants therefore requested that the Court make clear that its Preliminary Injunction does not encompass Title VII. *See* Defs.' Mot. at 10-11. Plaintiffs' only response is to point out that "schools are . . . also workplaces . . . subject to Title VII." Pls.' Resp. at 5. But even if the Preliminary Injunction extends as far as the enforcement of new Title VII actions against Plaintiffs and their public educational institutions, it should not be read to encompass Title VII enforcement against private parties or outside of public schools in the plaintiff states. Moreover, by its clear terms, the Preliminary Injunction does not apply to *investigations* involving Defendants' interpretation of Title VII. *See* Order at 37 (enjoining Defendants from "initiating, continuing, or concluding any investigation based on Defendants' interpretation that the definition of sex includes gender identity in *Title IX's* prohibition against discrimination on the basis of sex" (emphasis added)). Plaintiffs do not dispute this point.

5

*See* Defs.' Mot. at 20-21. As previously explained, OSHA's Best Practices Guide—like the other Guidelines—is advisory. *See* Defs.' Opp'n to Pls.' App. for Prelim. Inj. ("Defs.' PI Opp'n") at 5 n.3, ECF No. 40. Moreover, Plaintiffs' arguments with respect to OSHA-approved State Plans, *see* Pls.' Resp. at 7, display a fundamental misunderstanding of how such State Plans function. OSHA does not "enforce" its standards in states or territories with plans that cover both private and state and local government workplaces. *See* 29 U.S.C. § 667(e). Rather, these states and territories must adopt workplace safety and health standards and programs that are "at least as effective as" as OSHA standards. *Id.* § 667(c). The states and territories then enforce their own standards and programs. *Id.* §§ 667(b), (c)(2). In any event, there are no OSHA standards at issue here—only an unenforceable best practices guide—and states with State Plans that do not adopt OSHA's advice regarding access to restrooms by transgender individuals would not be in violation of the statute. Plaintiffs have therefore not shown—and cannot show—any injury or harm related to OSHA or DOL more broadly, and Defendants respectfully ask the Court to clarify that the Preliminary Injunction does not apply to any DOL or OSHA activities or programs.[5]

III.    **The Preliminary Injunction should not be read to apply beyond the Guidelines, which are the only arguably final agency actions in this case**

Agency action is subject to challenge under the APA only if it is final. *See, e.g.*, *Peoples Nat'l Bank v. Office of the Comptroller of the Currency of the United States*, 362 F.3d 333, 336 (5th Cir. 2004) ("If there is no 'final agency action' a federal court lacks subject matter jurisdiction."). As a result, a plaintiff cannot bring an APA challenge based on an abstract disagreement with an agency's understanding of the law, but must identify concrete, final action by the agency. *See, e.g.*, *Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt.*, 460 F.3d 13, 18 (D.C. Cir. 2006) ("The federal courts are not authorized to review agency policy choices in the

---

[5] In their Motion for Clarification, Defendants specifically raised the issue of activities and programs of DOL other than those of OSHA, which were not referenced in either the Amended Complaint or the motion for a preliminary injunction. *See* Defs.' Mot. at 20-21. DOL enforces laws that were not briefed at all in the preliminary injunction proceedings. Plaintiffs did not respond to this point, and have not identified any other DOL activities or programs that they believe to be properly within the scope of the Preliminary Injunction. Accordingly, Defendants ask that the Court confirm that the Preliminary Injunction does not prevent DOL from enforcing the various other laws that have been committed to its jurisdiction.

abstract."); *MPHJ Tech. Investments, LLC v. Fed. Trade Comm'n*, No. 14-cv-11, 2014 WL 12495297, at *3 (W.D. Tex. Sept. 16, 2014). Here, Plaintiffs identified the Guidelines as the allegedly unlawful final agency action, and the Court agreed, over Defendants' objection. *See* Order at 17 (concluding "that the Guidelines are final agency action under the APA").

Yet Plaintiffs now contend that the Preliminary Injunction should be read to encompass not only the Guidelines—the only arguably final agency action at issue in this litigation—but also other hypothetical agency action, "both known and unknown." Pls.' Resp. at 1 n.1. Plaintiffs ask the Court to enjoin "the actual rule" that "lurks somewhere beneath" the challenged Guidelines, *id.* at 2, as well as "guidances *unidentified* by Plaintiffs (in its pleadings or other filings)," *id.* at 10 (emphasis added). But Defendants have been transparent about their understanding that prohibiting transgender individuals from accessing restrooms, locker rooms, and similar facilities consistent with their gender identity amounts to sex-based discrimination under Title IX and its implementing regulations (as well as under Title VII). *See, e.g.*, Defs.' PI Opp'n at 1. Defendants have also been clear that the challenged Guidelines simply express the agency's understanding of what the law requires—they are not the source of any legal requirements. *See, e.g., id.* at 7, 14.

In any event, because the Court can enjoin only final agency action, the Preliminary Injunction should not be understood to extend beyond the Guidelines, to encompass the agencies' understanding of the law in the abstract or hypothetical rules not identified by Plaintiffs. Plaintiffs decided to challenge the agencies' interpretation of the law before it had coalesced into a concrete enforcement action against them. The Guidelines were the only even arguably final agency action that Plaintiffs could identify, and Plaintiffs made them the focal point of their motion for a preliminary injunction. As Plaintiffs admit, "[t]he injunction does not prevent Defendants from relying on statutes or other actual law or validly adopted regulations to undertake lawful anti-discrimination enforcement actions." Pls.' Resp. at 13. Plaintiffs are absolutely correct on this point. When a court decides that a document is an invalid legislative rule, the remedy is to vacate the document, not to bar the agency from ever acting on its underlying interpretation of the statute. *See, e.g., Natural Res. Def. Council v. E.P.A.*, 643 F.3d 311, 320-23 (D.C. Cir. 2011) (concluding

that an EPA publication was "a legislative rule that required notice and comment," and "vacat[ing]" it because no notice and comment occurred); *Gen. Elec. Co. v. E.P.A.*, 290 F.3d 377, 385 (D.C. Cir. 2002) (same).[6] Defendants thus ask the Court to clarify that they are not enjoined from taking actions that are not based on the Guidelines, but that reflect the agencies' interpretation of the relevant statutes and implementing regulations.

## IV. The Preliminary Injunction should not be read to prevent Defendants from asserting their interpretation of the law in other federal courts

Based on its plain language, the Preliminary Injunction applies only to "litigation initiated following the date of [the] Order." Order at 37. The Court should reject Plaintiffs' arguments to expand the Preliminary Injunction beyond its text, to litigation that was pending at the time that the Court entered the Preliminary Injunction. *See* Defs.' Reply Regarding Pending Litigation ("Defs.' Reply") at 2-7, ECF No. 72. Furthermore, as Defendants have explained, the Preliminary Injunction should be clarified to confirm that it applies only to litigation to which Plaintiffs are a party, even if initiated after the date of the Preliminary Injunction. *See* Defs.' PI Opp'n at 28-30; Defs.' Mot. at 12-16; Defs.' Reply Regarding Pending Litigation ("Defs.' Reply"), ECF No. 72. In short, Plaintiffs' proposed expansion of the Preliminary Injunction would improperly interfere with the Executive Branch's authority to conduct litigation, thereby raising significant separation of powers concerns, and would interfere with the authority of other federal courts to manage their dockets and to decide cases before them, in violation of principles of comity. And it would extend this Court's Preliminary Injunction far beyond the reach of its Article III authority, to cases that do not involve the plaintiff states and where there has not even been an attempt to make any showing of injury or irreparable harm.

Plaintiffs address none of these arguments. Instead, they assert that Defendants are engaged in a "ruse" to "appropriate court dockets as the new publishers of its rule." Pls.' Resp. at

---

[6] Plaintiffs seem to reject the very idea of interpretive rules. *See* Pls.' Resp. at 2-3. But it is well established that an agency can "advise the public of the agency's construction of the statutes and rules which it administers" without subjecting its interpretation to notice and comment rulemaking. *Perez v. Mortg. Bankers Ass'n*, 135 S. Ct. 1199, 1204 (2015). There is nothing improper about administrative action of this type—indeed, it is explicitly recognized by the APA, and serves to clarify statutes and regulations that may otherwise be unclear.

8

10. This argument appears to be a concern that other courts might agree with Defendants' understanding of the law as, indeed, many already have. But the fact that other courts might disagree with this Court is no reason to interfere with the constitutional duty of those courts to hear and consider arguments and to "say what the law is" in cases in which the government is a party. *Marbury v. Madison*, 1 Cranch 137, 177 (1803). To the contrary, such disagreements provide assistance to reviewing courts by airing competing legal positions. *See United States v. Mendoza*, 464 U.S. 154, 160 (1984). Nor is submitting a brief to a court some kind of clandestine way of promulgating a rule, as Plaintiffs suggest. It is advocacy—a completely appropriate function of the Attorney General and other agencies, who are charged by statute with representing the interests of the United States in courts across the country.

Plaintiffs' arguments are based on a fundamental mischaracterization of our federal court system. They seek to place this Court in the role of the Supreme Court, announcing binding precedent and preventing the government from asserting a contrary legal position before other federal courts in cases that do not involve the plaintiff states. Even if this Court's ruling were a final judgment—which it is not—it would not be binding on other federal courts. Nor would it "functionally rescind the Court's injunction," Pls.' Resp. at 12, for the government to assert its interpretation of the law in proceedings before other courts. The Supreme Court has expressly held that nonmutual collateral estoppel does not apply against the government, meaning that the government can litigate the same legal issue against multiple parties in multiple fora before the Supreme Court considers the issue. *See Mendoza*, 464 U.S. 154. Plaintiffs' expansive view of the Preliminary Injunction in this case cannot be reconciled with that holding.[7] Defendants ask this Court to confirm that the Preliminary Injunction does not dictate which arguments the government may assert before other courts, with the exception of litigation involving access to sex-segregated

---

[7] Plaintiffs' suggest that Defendants might violate Rule 11 of the Federal Rules of Civil Procedure if they assert their interpretation of the law before other courts, because this Court has found that the meaning of the term "sex" is clear. *See* Pls.' Resp. at 11. There is no basis for this position. The Preliminary Injunction ruling is not precedential even within *this* district, let alone within other federal jurisdictions. Furthermore, while this Court has thus far disagreed with Defendants' understanding of Title IX and its implementing regulations, other Courts have taken the opposite view. Thus, Defendants' arguments are not remotely frivolous within the meaning of Rule 11.

facilities by transgender individuals initiated after the entry of the Preliminary Injunction to which Plaintiffs are parties.

## CONCLUSION

For the reasons stated in Defendants' motion and set forth above, Defendants respectfully request that the Court clarify the scope of the Preliminary Injunction by October 3, 2016.

Dated: September 23, 2016                    Respectfully submitted,

                                               BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General

JENNIFER D. RICKETTS
Director, Federal Programs Branch

SHEILA M. LIEBER
Deputy Director, Federal Programs Branch

*/s/ Benjamin L. Berwick*
BENJAMIN L. BERWICK (MA Bar No. 679207)
JAMES BICKFORD (NY Bar No. 5163498)
Trial Attorney, U.S. Department of Justice
Civil Division, Federal Programs Branch
1 Courthouse Way, Suite 9200
Boston, MA 02210
Telephone: (617) 748-3129
Facsimile: (617) 748-3965
Email: Benjamin.L.Berwick@usdoj.gov

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

     I hereby certify that on September 23, 2016, a copy of the foregoing Reply in Support of Defendants' Motion for Clarification of the Court's Preliminary Injunction Order was filed electronically via the Court's ECF system, which effects service upon counsel of record.

                                                            */s/ Benjamin L. Berwick*
                                                            Benjamin L. Berwick