**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION**

| | | |
|---|---|---|
| **STATE OF TEXAS**, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 7:16-cv-54-O |
| | ) | |
| **UNITED STATES OF AMERICA**, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANTS' MOTION TO STAY IN PART, PENDING APPEAL, THE COURT'S
PRELIMINARY INJUNCTION ORDER AND THE COURT'S FURTHER ORDER OF
OCTOBER 18, 2016, AND UNOPPOSED REQUEST FOR EXPEDITED
CONSIDERATION**

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

BACKGROUND .............................................................................................................. 3

STANDARD OF REVIEW .............................................................................................. 5

ARGUMENT ................................................................................................................... 6

    I.    DEFENDANTS HAVE A SUBSTANTIAL LIKELIHOOD OF PREVAILING
          ON APPEAL AND, AT A MINIMUM, RAISE A SUBSTANTIAL ISSUE
          REGARDING THE SCOPE OF THE INJUNCTION ....................................................... 6

    II.   DEFENDANTS AND THE PUBLIC WILL BE IRREPARABLY HARMED
          ABSENT A PARTIAL STAY ......................................................................................... 18

    III.  PLAINTIFFS WILL NOT BE HARMED BY THE PARTIAL STAY
          REQUESTED BY DEFENDANTS ............................................................................... 21

CONCLUSION ............................................................................................................... 22

# TABLE OF AUTHORITIES

<u>**Cases**</u>

*Brennan v. J.M. Fields, Inc.*,
 488 F.2d 443 (5th Cir. 1973)............................................................................... 21, 22

*C.F.T.C. v. Hudgins*,
 No. 6:08-CV-187, 2009 WL 3645053 (E.D. Tex. Nov. 2, 2009).......................... 5, 6

*Califano v. Yamasaki*,
 442 U.S. 682 (1979)................................................................................... 6, 11, 21

*Caplin & Drysdale, Chartered v. United States*,
 491 U.S. 617 (1989)......................................................................................... 8

*Carcaño v. McCrory*,
 --- F. Supp. 3d -- , 2016 WL 4508192 (M.D.N.C. Aug. 26, 2016)............... 16, 17, 20

*Cohen v. Brown Univ.*,
 991 F.2d 888 (1st Cir. 1993)............................................................................ 20

*Connection Distrib. Co. v. Reno*,
 154 F.3d 281 (6th Cir. 1998).......................................................................... 18

*Cornish v. Dudas*,
 540 F. Supp. 2d 61 (D.D.C. 2008).................................................................. 18

*Friends of the Earth v. Laidlaw Envt'l Servs.*,
 528 U.S. 167 (2000)....................................................................................... 8

*G.G. v. Gloucester Cnty. Sch. Bd.*,
 822 F.3d 709 (4th Cir. 2016) ........................................................ 15, 16, 17, 20

*Georgia-Pac. Consumer Prod. LP v. von Drehle Corp.*,
 781 F.3d 710 (4th Cir. 2015).......................................................................... 17

*Goldberg v. Cockrell*,
 303 F.2d 811 (5th Cir. 1962) ......................................................................... 22

*Hernandez v. Reno*,
 91 F.3d 776 (5th Cir. 1996)............................................................................ 7, 8

*Highland Bd. of Ed. v. U.S. Dep't of Ed.*,
 2016 WL 5372349 (S.D. Ohio Sept. 26, 2016) ......................................... 16, 17, 20

*Hodgson v. First Fed. Sav. & Loan Ass'n*,
 455 F.2d 818 (5th Cir. 1972) ......................................................................... 21, 22

*Holland v. Nat'l Mining Ass'n*,
   309 F.3d 808 (D.C. Cir. 2002) ................................................................ 12, 13, 19

*Hollon v. Mathis Indep. Sch. Dist.*,
   491 F.2d 92 (5th Cir. 1974) ................................................................................ 7

*Kowalski v. Tesmer*,
   543 U.S. 125 (2004)............................................................................................ 8

*Lewis v. Casey*,
   518 U.S. 343 (1996)........................................................................................ 7, 8

*Lion Health Servs., Inc. v. Sebelius*,
   635 F.3d 693 (5th Cir. 2011) ........................................................................... 6, 7

*Los Angeles Haven Hospice, Inc. v. Sebelius*,
   638 F.3d 644 (9th Cir. 2011) ................................................................. 7, 8, 13, 19

*McCabe v. Atchison, T. & S.F.R. Co.*,
   235 U.S. 151 (1914)........................................................................................... 9

*Meyer v. CUNA Mut. Ins. Soc'y*,
   648 F.3d 154 (3d Cir. 2011)............................................................................... 7

*Nken v. Holder*,
   556 U.S. 418 (2009)...................................................................................... 5, 18

*Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*,
   734 F.3d 406 (5th Cir. 2013) .............................................................................. 5

*Regan v. Time, Inc.*,
   468 U.S. 641 (1984)........................................................................................... 8

*Ruiz v. Estelle*,
   650 F.2d 555 (5th Cir. 1981) .............................................................................. 5

*Schlesinger v. Reservists Comm. to Stop the War*,
   418 U.S. 208 (1974)........................................................................................... 9

*Sharpe v. Cureton*,
   319 F.3d 259 (6th Cir. 2003) .............................................................................. 7

*Students & Parents for Privacy v. U.S. Dep't of Educ.*,
   No. 16-cv-4945 (N.D. Ill. Oct. 18, 2016) .......................................................... 17

*Texas v. United States*,
   787 F.3d 733 (5th Cir. 2015) ......................................................................... 8, 21

*Texas v. United States*,
  809 F.3d 134 (5th Cir. 2015) ........................................................................ 4, 12, 13

*The Real Truth About Abortion, Inc. v. FEC*,
  681 F.3d 544 (4th Cir. 2012) ................................................................................ 7

*U.S. Dep't of Defense v. Meinhold*,
  114 S. Ct. 374 (1993) ........................................................................................... 6

*United States v. AMC Entm't, Inc.*,
  549 F.3d 760 (9th Cir. 2008) .............................................................................. 17

*United States v. Baylor Univ. Med. Ctr.*,
  711 F.2d 38 (5th Cir. 1983) .............................................................................. 5, 6

*United States v. Mendoza*,
  464 U.S. 154 (1984) .......................................................................... 12, 13, 16, 19

*Va. Society for Human Life, Inc. v. FEC*,
  263 F.3d 379 (4th Cir. 2001) ........................................................................ 7, 8, 13

*Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*,
  559 F.2d 841 (D.C. Cir. 1977) .............................................................................. 6

*Whitaker v. Kenosha Unified Sch. Dist. No. 1*,
  No. 16-cv-943 (E.D. Wisc. Sept. 22, 2016) ........................................................ 17

*Wirtz v. Ocala Gas Co.*,
  336 F.2d 236 (5th Cir. 1964) .............................................................................. 21

*Zepeda v. INS*,
  753 F.2d 719 (9th Cir. 1983) .............................................................................. 11

**<u>Statutes</u>**

5 U.S.C. § 705 .......................................................................................................... 11

20 U.S.C. § 1681 ...................................................................................................... 18

20 U.S.C. § 1682 ...................................................................................................... 18

28 U.S.C. § 516 ................................................................................................... 15, 19

28 U.S.C. § 517 ................................................................................................... 15, 18

28 U.S.C. § 518 ................................................................................................... 15, 19

28 U.S.C. § 519 ................................................................................................... 15, 19

42 U.S.C. § 2000e-5.................................................................................................................... 18

42 U.S.C. § 2000e-6.................................................................................................................... 18

**<u>Rules</u>**

Fed. R. App. P. 8(a)(1)(A) ........................................................................................................... 6

Fed. R. Civ. P. 62 ......................................................................................................................... 5

S. Ct. R. 17.1 .............................................................................................................................. 12

**<u>Regulations</u>**

34 C.F.R. § 106.33 ..................................................................................................................... 10

**<u>Other Authority</u>**

Wright & Miller, Fed. Practice & Proc., § 2944 ....................................................................... 21

**INTRODUCTION**

Defendants respectfully move for a partial stay, pending appeal, of the Preliminary Injunction entered in this case on August 21, 2016, *see* Prelim. Inj. Order ("PI Order"), ECF No. 58, and of the Court's Order of October 18, 2016, granting in part and denying in part Defendants' Motion for Clarification, *see* Order ("Clarif. Order"), ECF No. 86.  Defendants have filed a Notice of Appeal from these orders.  *See* ECF No. 88.  Defendants disagree with the Court's decision to enter a preliminary injunction in this case; however, at present, they seek a stay only as to the Preliminary Injunction's application to states and entities that are not plaintiffs in this case.

Defendants easily satisfy the standard for a stay pending appeal.  First, Defendants have a substantial likelihood of prevailing on appeal on the issue of the scope of the injunction—at the very least, they have raised a serious question of law.  The sweeping injunction entered by the Court forecloses Defendants from investigating possible violations of Title IX by non-plaintiffs and from enforcing Title IX against non-plaintiffs where such violations are established, and even restricts Defendants' ability to make legal arguments in other courts across the country.  There was no basis for the entry of such an injunction.  It is black-letter law that preliminary injunctive relief should be only as broad as necessary to prevent irreparable harm to the plaintiffs, pending an opportunity for a full adjudication on the merits.  Here, Plaintiffs did not even attempt to show— nor could they have shown—that limiting preliminary relief to them alone would injure them in any way.  Therefore, to the extent that it applies to non-plaintiffs, the Preliminary Injunction should be stayed pending appeal.

By extending the Preliminary Injunction to non-plaintiff states and other non-plaintiff entities, the Court provided relief that non-plaintiff states and entities did not seek, and that many directly opposed.  In no sense was this relief necessary or appropriate to redress the limited harms

alleged by the plaintiff states and credited by the Court.  Plaintiffs did not claim—and would not have standing to assert—any injury to non-plaintiff states.  Indeed, twelve non-plaintiff states and the District of Columbia opposed the entry of *any* preliminary injunction and expressly disavowed any claim of injury.  They explained in their *amicus curiae* brief that they *benefit* from the agencies' interpretation and enforcement of the law.  Those states are perfectly capable of protecting their own interests without this Court's unwanted intervention.

Second, in the absence of a stay, Defendants and the public will be irreparably harmed by the Preliminary Injunction's application beyond Plaintiffs and their educational institutions.  The injunction prevents Defendants from carrying out their statutory enforcement responsibilities according to their interpretation of the law.  Numerous investigations and enforcement actions not involving Plaintiffs or their educational subdivisions are currently on hold as a result.  Numerous transgender individuals residing in non-plaintiff states—who have filed administrative complaints that the agencies are required by law to review and investigate—may also be irreparably harmed, despite having no connection to this lawsuit.  *See* Decl. of Catherine E. Lhamon ("Lhamon Decl.") ¶¶ 26-33.  The injunction's overbroad scope also harms the public by hindering the development of the law in this important area.  It denies other federal courts the benefit of the fully developed legal arguments that this Court is permitted to enjoy, and it unnecessarily impedes the multi-circuit percolation necessary for effective review by the Supreme Court.

Third, Plaintiffs will suffer no harm if the Court grants a stay.  In multiple rounds of briefing and oral argument, they have not once explained why a preliminary injunction extending beyond their borders is necessary to remedy *their* alleged injuries.  There is no conceivable way in which investigation, enforcement, or litigation activities involving non-plaintiffs could harm the

Plaintiffs in this case, and a significant number of non-plaintiff states have expressly disavowed any harm to themselves and expressed support for Defendants' position.

Given the importance of the issues in this case, and the harm to Defendants and the public absent a partial stay of the Preliminary Injunction, Defendants respectfully request expedited briefing and consideration of this motion, and are willing to forgo a reply brief in order to facilitate such expedition. Specifically, Defendants propose that Plaintiffs file a response to this stay motion by November 15, 2016, and Defendants respectfully ask that the Court issue a ruling by November 18, 2016. Absent a ruling by the close of business on that date, Defendants may seek relief from the Fifth Circuit in order to protect their interests. The undersigned counsel for Defendants consulted with counsel for Plaintiffs, who represented that Plaintiffs do not oppose this expedited briefing schedule.

## BACKGROUND

Plaintiffs brought this lawsuit against the U.S. Departments of Education ("ED"), Justice ("DOJ"), and Labor ("DOL"), as well as the Equal Employment Opportunity Commission ("EEOC") and various agency officials in their official capacities (collectively, "Defendants"). ECF No. 1. The Complaint challenges several memoranda, fact sheets, and guidance documents (collectively, "Guidelines"), which reflect Defendants' interpretation of the prohibition against sex discrimination in Title VII, Title IX, and Title IX's implementing regulations, as applied to transgender individuals. Plaintiffs moved for a preliminary injunction, ECF No. 11, which the Court granted on August 21, 2016.

In its Preliminary Injunction Order, the Court enjoined Defendants during the pendency of this litigation from (1) "enforcing the Guidelines against Plaintiffs and their respective schools, school boards, and other public, educationally-based institutions," (2) "initiating, continuing, or

concluding any investigation based on Defendants' interpretation that the definition of sex includes gender identity in Title IX's prohibition against discrimination on the basis of sex," and (3) "using the Guidelines or asserting the Guidelines carry weight in any litigation initiated following the date of this Order."  PI Order at 37.  The Court used the term "Guidelines" to refer collectively to six specific documents: (1) a 2010 Dear Colleague Letter issued by ED's Office for Civil Rights ("OCR") regarding harassment and bullying; (2) an April 2014 OCR Guidance Document regarding sexual violence; (3) a December 2014 memo issued by then Attorney General Eric Holder; (4) a June 2015 OSHA Best Practices guide; (5) a May 3, 2016 EEOC fact sheet; and (6) a May 13, 2016 Dear Colleague Letter on transgender students issued jointly by ED and DOJ.  *See id.* at 3 n.4.

On September 12, 2016, Defendants moved to clarify several aspects of the Preliminary Injunction, including—as particularly relevant to this motion—its application to non-plaintiff states and other non-plaintiff entities.  *See* Defs' Mot. for Clarification, ECF No. 65; *see also* Defs.' Reply in Support of Mot. for Clarification, ECF No. 74.  On October 18, 2016, the Court issued an Order clarifying that "the scope of this injunction should be and is nationwide."  Clarif. Order at 3.  In so holding, the Court first cited several Supreme Court and Fifth Circuit cases for the proposition that district courts have "the power to issue a nationwide injunction where appropriate."  *Id.* at 4.  The Court then stated that "[b]oth Title IX and Title VII rely on the consistent, uniform application of national standards in education and workplace policy."  *Id.*  The Court found that "limit[ing] the injunction to the plaintiff states who are a party to this cause of action" would "risk[] a 'substantial likelihood that a geographically-limited injunction would be ineffective.'"  *Id.* (quoting *Texas v. United States*, 809 F.3d 134, 188 (5th Cir. 2015)).  Finally, the Court elaborated that the injunction prohibits the government "from using the Guidelines or

4

asserting the Guidelines carry weight," PI Order at 37, "in litigation not substantially developed before the August 21, 2016 Order . . . , regardless of whether plaintiff states are involved." Clarif. Order at 6 n.2. Further briefing regarding other aspects of the scope of the Preliminary Injunction is currently pending before the Court. *See* ECF Nos. 90, 92.

Defendants have appealed the Court's Preliminary Injunction Order and its Order on the Motion for Clarification to the Fifth Circuit. *See* Notice of Appeal, ECF No. 88.

## STANDARD OF REVIEW

Defendants request a partial stay pending appeal of the Court's Preliminary Injunction. Federal Rule of Civil Procedure 62 permits the trial court, in its discretion, to suspend or modify an injunction during the pendency of an appeal. Courts typically consider four factors in evaluating a request for a stay pending appeal: (1) whether the movant has made a showing of likelihood of success on the merits; (2) whether the movant will be irreparably harmed if the stay is not granted; (3) whether issuance of a stay will substantially harm the other parties; and (4) whether the granting of the stay serves the public interest. *See Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*, 734 F.3d 406, 410 (5th Cir. 2013); *see also C.F.T.C. v. Hudgins*, No. 6:08-CV-187, 2009 WL 3645053, at *2 (E.D. Tex. Nov. 2, 2009). Where the federal government is a party, its interests and the public interest overlap in the balancing of harms. *See Nken v. Holder*, 556 U.S. 418, 420 (2009). Moreover, a party seeking such a stay need only present a "substantial case on the merits," as opposed to a likelihood of success on the merits, where—as here—"a serious legal question is involved and . . . the balance of equities weighs heavily in favor of granting the stay." *United States v. Baylor Univ. Med. Ctr.*, 711 F.2d 38, 39 (5th Cir. 1983) (quoting *Ruiz v. Estelle*, 650 F.2d 555, 565 (5th Cir. 1981)).

**ARGUMENT**

## I. DEFENDANTS HAVE A SUBSTANTIAL LIKELIHOOD OF PREVAILING ON APPEAL AND, AT A MINIMUM, RAISE A SUBSTANTIAL ISSUE REGARDING THE SCOPE OF THE INJUNCTION

The Court is familiar with Defendants' arguments regarding the scope of the Preliminary Injunction and, in particular, why the injunction should not extend beyond the plaintiff states and their public educational institutions.  Although Defendants recognize that the Court has rejected these arguments, Defendants respectfully submit that they are likely to prevail on appeal for the reasons stated below and in their previous briefs to this Court.  However, this Court need not agree with Defendants' position or believe that Defendants are likely to prevail on appeal in order to conclude that Defendants are entitled to a partial stay of the Preliminary Injunction at this juncture. *See Baylor Univ.*, 711 F.2d at 39.  Indeed, "[p]rior recourse to the [district court] would hardly be required as a general matter if it could properly grant interim relief only on a prediction that it has rendered an erroneous decision." *Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 844 (D.C. Cir. 1977); *cf.* Fed. R. App. P. 8(a)(1)(A) (providing that "[a] party must ordinarily move first in the district court" before seeking a "stay . . . pending appeal").  Where a "serious legal question" is involved, the movant can satisfy this first prong of the four-part test by demonstrating a "substantial case on the merits." *Baylor Univ.*, 711 F.2d at 39.  This less-exacting standard applies where—as here—"there are legal issues having far-reaching effects, involving significant public concerns." *Hudgins*, 2009 WL 3645053, at *3.

Defendants have raised serious legal questions about the scope of the Preliminary Injunction and at a minimum have a substantial case on appeal.  As explained in Defendants' briefs in support of their Motion for Clarification, a preliminary injunction "should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Califano*

*v. Yamasaki*, 442 U.S. 682, 702 (1979); *see also Lion Health Servs., Inc. v. Sebelius*, 635 F.3d 693, 703 (5th Cir. 2011) (same).  The Supreme Court and courts of appeals, including the Fifth Circuit, have repeatedly narrowed or vacated injunctions that afforded relief beyond what was necessary to redress the irreparable harm that the district court found to have been demonstrated by the plaintiffs in a particular case.  *See U.S. Dep't of Defense v. Meinhold*, 114 S. Ct. 374 (1993) (staying the non-plaintiff application of a preliminary injunction against implementation of the military's Don't Ask, Don't Tell policy); *Lewis v. Casey*, 518 U.S. 343, 357 (1996) (reversing injunctive relief that extended beyond the injuries established by the plaintiffs, because only actions that "have harmed a[] plaintiff in this lawsuit" could be "the proper object of this District Court's remediation"); *Lion Health*, 635 F.3d at 703 (holding that the district court abused its discretion by imposing an injunction that was "broader and more burdensome than necessary to afford Lion full relief"); *Hernandez v. Reno*, 91 F.3d 776, 781 (5th Cir. 1996) (modifying overbroad injunction to "apply to [plaintiff] only" where "[t]he breadth of the injunction issued by the trial judge . . . is not necessary to remedy the wrong suffered by [plaintiff]"); *Hollon v. Mathis Indep. Sch. Dist.*, 491 F.2d 92, 93 (5th Cir. 1974) (per curiam) (vacating preliminary injunction as overbroad because "[i]n this case, which is not a class action, the injunction against the School District from enforcing its regulation against anyone other than [plaintiff] reaches further than is necessary to serve [the] purpose" of preserving the status quo among the parties); *see also, e.g.*, *Los Angeles Haven Hospice, Inc. v. Sebelius*, 638 F.3d 644, 664-65 (9th Cir. 2011) (affirming district court's stay of the non-plaintiff aspect of its own injunction, because "[i]njunctive relief generally should be limited to apply only to named plaintiffs when there is no class certification.") (quotation marks omitted); *Meyer v. CUNA Mut. Ins. Soc'y*, 648 F.3d 154, 170 (3d Cir. 2011); *Sharpe v. Cureton*, 319 F.3d 259, 273 (6th Cir. 2003); *Va. Society for Human Life, Inc. v. FEC*,

263 F.3d 379, 393-94 (4th Cir. 2001), *overruled on other grounds*, *The Real Truth About Abortion, Inc. v. FEC*, 681 F.3d 544 (4th Cir. 2012).

While an injunction that extends beyond the parties may be appropriate "if necessary to afford relief to the prevailing party," *Va. Society for Human Life*, 263 F.3d at 393, that prerequisite is certainly not satisfied here, where the plaintiff states have no legitimate interest in the enforcement of the law (or lack thereof) outside their borders or against entities besides themselves and their public educational institutions. *Compare Texas v. United States*, 787 F.3d 733, 769 (5th Cir. 2015) (upholding issuance of a nationwide injunction in part because of "a substantial likelihood that a partial injunction would be ineffective" in providing complete relief to the plaintiff states due to the migration of individuals across state lines),[1] *with L.A. Haven Hospice*, 638 F.3d at 665 ("[T]he national injunction was too broad" because an injunction applying only to the plaintiff "would have afforded the plaintiff complete relief."); *Va. Society for Human Life*, 263 F.3d at 393 ("In this case VSHL is the only plaintiff.   An injunction covering VSHL alone adequately protects it from the feared prosecution."); *Hernandez*, 91 F.3d at 781.

The Preliminary Injunction's extension to non-plaintiff states and other non-plaintiff entities also exceeds the scope of any injury alleged by Plaintiffs, and thus raises Article III concerns. *See, e.g.*, *Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004) ("[A] party generally . . . cannot rest his claim to relief on the legal rights or interests of third parties.") (quotation marks omitted)[2];

---

[1] By contrast, in this case, if a public school student moved from a non-plaintiff state to a plaintiff state, this Court's injunction would remain fully operative in the plaintiff state, regardless of the policies of the student's prior state of residence.

[2] The Supreme Court has recognized only a very limited exception, under which Article III may permit a plaintiff to seek relief as to non-parties:  The litigation must directly impact the non-party, the non-party must lack the ability "to advance his own rights," and there must be a close relationship—like attorney-client, or doctor-patient—between the party and non-party. *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 623 n.3 (1989).  Plaintiffs in this case obviously cannot satisfy those requirements. *See also Regan v. Time, Inc.*, 468 U.S. 641, 651 n.8 (1984) (describing First Amendment overbreadth doctrine—"an exception to the normal rules of standing").

*see also Friends of the Earth v. Laidlaw Envt'l Servs.*, 528 U.S. 167, 193 (2000) (explaining that Article III dictates that "federal courts should aim to ensure the framing of relief no broader than required by the precise facts" (quotation marks omitted)); *Lewis*, 518 U.S. at 357 (the scope of an injunction "must of course be limited to the inadequacy that produced the injury in fact that the plaintiff has established"). Plaintiffs have no legally cognizable interest in the enforcement of the law in non-plaintiff states and against non-plaintiff entities. Indeed, there has been no showing by Plaintiffs—and no finding by this Court—of any kind of injury or harm to Plaintiffs as a result of enforcement against *other* states and their educational institutions. As the Supreme Court has long cautioned, "[t]he desire to obtain sweeping relief cannot be accepted as a substitute for compliance with the general rule that the complainant must present facts sufficient to show that his individual need requires the remedy for which he asks." *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 221-22 (1974) (alterations omitted) (quoting *McCabe v. Atchison, T. & S.F.R. Co*., 235 U.S. 151, 164 (1914)).

Furthermore, there has been no showing of injury or harm to non-plaintiffs themselves. To be clear, even were the Court to find harm to non-parties—which it has not done—that would not justify the expansive scope of the injunction, which should be no broader than necessary to provide relief to Plaintiffs. But it is telling that twelve non-plaintiff states and the District of Columbia have filed a brief supporting Defendants' position and explicitly disavowing any allegations that they were harmed by Defendants' interpretation of the law. *See* States' Amicus Curiae Br. in Opp'n to Pls.' App. for Prelim. Inj., ECF No. 34, at 1 ("[T]he federal guidance at issue here threatens no imminent harm" but rather "is strongly in the public interest."); *id.* at 24 ("It would be absurd for this Court, in the name of 'federalism,' to tell the Amici States that a policy those States have determined is beneficial is actually harming them. Plaintiffs speak only for

themselves, not the whole country."). Those states and other non-parties are in a better position

than Plaintiffs or this Court to assess their own interests and injuries.

It is no answer that those states can simply enact and enforce their own laws if they choose

to. *See* Clarif. Order at 4 n.1. It is not for this Court to dictate to sovereign states that they must

already have or must enact *any* law to be free of this Court's injunction, much less to prescribe

what those laws must say. *See* PI Order, at 37 (instructing that, to avoid being covered by the

injunction, non-plaintiff states must have or enact "state law that recognizes the permissive nature

of [34 C.F.R.] § 106.33"). This approach flips the preliminary injunction standard on its head.

Neither the Supreme Court, nor the Fifth Circuit, nor any other federal court of which Defendants

are aware, has held that district courts should award injunctive relief to the maximum extent

possible, so long as it would not injure non-parties; instead, the Supreme Court has repeatedly

instructed courts to award such relief only to the extent necessary to prevent injury to plaintiffs. If

Plaintiffs in this case are not harmed by the enforcement of federal law against other states and

entities—and they clearly are not—then non-plaintiff injunctive relief is inappropriate, without

regard to the injunction's impact on non-plaintiff states.

In any case, the Preliminary Injunction *does* impose burdens on non-plaintiff states, by

denying them the benefit of federal antidiscrimination enforcement, which many states have told

this Court that they desire. *See* ECF No. 34. Now, because of an injunction in a case to which

they are not parties, non-plaintiff states must expend resources to enact (if they have not done so

already) and enforce their own laws protecting transgender individuals from discrimination. It is

thus incorrect that non-plaintiff states "can easily avoid" being "covered by this injunction." PI

Order, ECF No. 58, at 37. *No* state can avoid being covered, because the injunction prohibits the

precise benefit the states were receiving—federal enforcement of the civil rights laws—in *every*

state, regardless of anything the state does.  In short, by expanding the scope of the Preliminary Injunction to non-plaintiff states, the Court has inflicted harm on non-plaintiff states and their citizens, while remedying no harm to Plaintiffs.

In deciding that an injunction beyond the parties was appropriate in this case, the Court looked to three factors, none of which supports the Court's conclusion.  First, the Court observed that "Defendants are a group of agencies and administrators capable of enforcing their Guidelines nationwide, affecting numerous state and school district facilities across the country," and asserted that "[a] nationwide injunction is necessary because the alleged violation extends nationwide." Clarif. Order at 4.  It is certainly true that Defendants' authority extends nationwide, but that is always true of the federal government.  The Court's analysis suggests that anytime a court enjoins a federal policy as to one regulated party, it should enjoin that policy as to all affected parties. That is not and cannot be the law.  Such a practice would disregard the Supreme Court's repeated instruction that equitable relief must extend no further than necessary to protect the plaintiffs, and it would contravene the bedrock Article III principle that a party generally cannot seek relief as to non-parties or represent non-parties' interests.  In fact, the Administrative Procedure Act explicitly provides that, in granting preliminary relief to preserve the status quo, courts should tailor injunctions to the plaintiffs' showing of irreparable harm.  *See* 5 U.S.C. § 705 ("On such conditions as may be required and *to the extent necessary to prevent irreparable injury*, the reviewing court … may issue all necessary and appropriate process … to preserve status or rights pending conclusion of the review proceedings.") (emphasis added).  Thus, the relevant question is not the geographic scope of Defendants' authority; the question is what precise remedies are necessary to afford complete relief *to Plaintiffs*.  *See Califano*, 442 U.S. at 702 (affirming that injunctive relief must not "be more burdensome than necessary to redress the complaining parties"); *accord, e.g.*,

11

*Zepeda v. INS*, 753 F.2d 719, 728 n.1 (9th Cir. 1983) (emphasizing that "a preliminary injunction can only be employed for the limited purpose of maintaining the status quo," and that "injunctive relief should be narrowly tailored to remedy the specific harms shown by plaintiffs, rather than to enjoin all possible breaches of the law") (quotation marks omitted).

Second, the Court stated that "Title IX and Title VII rely on the consistent, uniform application of national standards in education and workplace policy." Clarif. Order at 4. It is not clear how those statutes "rely" on a uniform interpretation as to all regulated parties. Federal statutes routinely apply differently in different circuits based on different judicial determinations; the federal court system resolves circuit splits *ex post* through the appellate process, not *ex ante* through preliminary injunctions or collateral estoppel. *See, e.g.*, *United States v. Mendoza*, 464 U.S. 154, 160 (1984) (citing Sup. Ct. R. 17.1); *Holland v. Nat'l Mining Ass'n*, 309 F.3d 808, 815 (D.C. Cir. 2002) (noting the importance of "circuit disagreements" while interpreting a federal statute). Moreover, the agencies that are actually charged with enforcing those laws disagree that uniformity is paramount: Although they oppose any injunction against them, as relevant to this stay motion, they have argued that relief should be limited to the plaintiff states. In any case, the Court did not explain how *Plaintiffs* are harmed if the law is not enforced uniformly.[3]

Third, the Court opined that there is "a 'substantial likelihood that a geographically-limited injunction would be ineffective.'" Clarif. Order at 4 (quoting *Texas*, 809 F.3d at 188). But the Court offered no explanation why an injunction limited to the plaintiff states would fail to afford complete relief to Plaintiffs. Although the Court relied on the Fifth Circuit's affirmance of a

---

[3] In their response to the Motion for Clarification, Plaintiffs argued for non-party relief by maintaining that "the focus of the Court's relief" should be on "the wrongdoers"—i.e., the agency defendants. Pls' Response to Defs' Mot. for Clarification, ECF No. 73, at 10. That is incorrect: The scope of a preliminary injunction depends on the movant's irreparable harm, just as the scope of standing depends on the plaintiff's injury-in-fact. Unsurprisingly, Plaintiffs marshaled not a single case in support of this novel contention. As the instant motion has explained, injunctive relief exists to protect the movant, not to protect non-parties. Plaintiffs' argument implies that non-party relief is appropriate as a matter of course, a position that Plaintiffs cannot seriously defend.

nationwide injunction in the *Texas* immigration case, that case is easily distinguishable.  The *Texas* decision did not merely aver that injunctive relief as to parties only would be "ineffective."  It explained that, based on the specific nature of the policy under review, there was a "substantial likelihood that a geographically-limited injunction would be ineffective because DAPA beneficiaries would be free to move among states."  809 F.3d at 188.  Its conclusion was thus limited to the immigration context, where individuals' beneficiary status travels with them when they move to a new state.  No corresponding concern exists here: A transgender student's Title IX rights in a non-plaintiff state would not travel with her if she moved to a plaintiff state.  A plaintiff-only injunction would continue to fully protect Plaintiffs and their school districts from federal enforcement of the Guidelines.  Thus, there is no way that Plaintiffs could be harmed by the Preliminary Injunction's non-application elsewhere—unlike in *Texas*.  Allowing Defendants to assert their interpretations of Title VII and Title IX in non-plaintiff states (many of which agree with Defendants' interpretations) will in no way impair the effectiveness of a preliminary injunction limited to the plaintiff states.  Indeed, Plaintiffs have never even attempted to contest this point.  This case therefore does not present "appropriate circumstances" for non-plaintiff relief. *Id.*

The injunction's application to non-parties would also prevent other district courts and courts of appeals from weighing in on the legal issues presented in this case, thereby "substantially thwart[ing] the development of important questions of law by freezing the first final decision rendered on a particular legal issue."  *Mendoza*, 464 U.S. at 160; *see also Va. Society for Human Life*, 263 F.3d at 393.  This factor is particularly important where, as here, "a regulatory challenge involves important or difficult questions of law, which might benefit from development in different factual contexts and in multiple decisions by the various courts of appeals."  *Los Angeles Haven*

13

*Hospice*, 638 F.3d at 664.  As the D.C. Circuit has cautioned, "[a]llowing one circuit's statutory interpretation to foreclose . . . review of the question in another circuit would squelch the circuit disagreements that can lead to Supreme Court review." *Nat'l Mining Ass'n*, 309 F.3d at 815.

Although the Court has professed that it does not intend the Preliminary Injunction to "unnecessarily interfere with litigation currently pending before other federal courts on this subject," PI Order at 37, the injunction does precisely that.  It interferes with the Executive Branch's ability to defend itself in litigation filed by non-plaintiffs and to represent the interests of the United States in litigation more generally, raising serious separation-of-powers concerns.  *See* PI Order at 37; Clarif. Order at 5-6 & n.2.  The Preliminary Injunction forbids the United States from asserting that the Guidelines carry weight in *any* litigation, save only for the few pending cases that had become "substantially developed" as of August 21, 2016.  Clarif. Order at 6 n.2.  It also permits the government to offer its legal views in an amicus brief only when called upon to do so by a court of appeals or by the Supreme Court (again, except in "substantially developed" cases)—and even in such cases, it appears to prohibit the government from making certain arguments about the Guidelines.  *See id.* at 6-7 ("Defendants are enjoined from relying on the Guidelines, but may offer textual analyses of Title IX and Title VII in cases where the Government and its agencies are defendants or where the United States Supreme Court or any Circuit Court request that Defendants file amicus curiae briefing on this issue.").  Even Plaintiffs do not think the preliminary injunction should extend that far.  *See* Pls' Notice of Pending Litig., ECF No. 64, at 12-13 ("Plaintiffs do not contend that the injunction should operate to impede upon the Supreme Court's perpetual invitation to the Solicitor General to participate in matters pending before it.").

To our knowledge, that order represents the first time in our nation's history that a district judge has attempted to control the content of briefs that a litigant may file in other courts.  For a

14

district court to claim such power under any circumstances would be deeply troubling.  But for the Court to impose this unprecedented restriction on the United States is more than troubling—it is a direct affront to the separation of powers.  The President is invested by the Constitution with sole responsibility to "take Care that the Laws be faithfully executed," which includes both the power and the obligation to interpret our nation's laws, and to represent that interpretation before the judiciary.  In service of that responsibility, the Attorney General is authorized by statute to attend to the interests of the United States by participating in litigation in any court in the nation, state or federal.  *See* 28 U.S.C. §§ 516-519.  Thus it has been for more than a century.  It is not within this Court's authority to prohibit the Executive Branch from fully defending itself when it is sued in other courts, or to dictate the content of any amicus briefs or statements of interest in cases where Plaintiffs and their schools are not parties.  Yet this Court has forbidden the United States from offering its view of federal law except in response to a direct request; and even then, certain subjects remain forbidden.  The Court has thus arrogated to itself the power to silence an entire branch of Government.

The Preliminary Injunction threatens the Judicial Branch as well, by imposing arbitrary limits on the arguments that may be made in courts nationwide.  While a court may appropriately direct the conduct of litigants that appear before it, surely no court may tell sister courts of equal dignity how to manage their own affairs.  Yet the injunction goes quite a bit further than that, because it also purports to control what occurs in superior courts:  Under the injunction, a court of appeals may not receive the federal Government's legal views unless it makes a special request; and even in such circumstances the court may not learn what the Government thinks about the Guidelines.  This prohibition extends even into the Fourth Circuit, which has already issued a binding opinion addressing both the Guidelines and the proper interpretation of Title IX.  *See G.G.*

15

*v. Gloucester Cnty. Sch. Bd.*, 822 F.3d 709, 722-23 (4th Cir. 2016), *mandate recalled and stayed*, *Gloucester Cnty. Sch. Bd. v. G.G.*, No. 16A52 (Aug. 3, 2016), *petition for certiorari granted*, No. 16-273 (Oct. 28, 2016).[4]  Worse still, the injunction explicitly purports to control the arguments that the government may make to the United States Supreme Court in cases that were not "substantially developed" prior to August 21, 2016.  This Court has claimed for itself the power to render the Executive Branch mute on an important question of federal law; to direct the course of litigation in every federal appellate court in the country; even to interfere with proceedings before the Supreme Court.

This prohibition is imposed even in cases where plaintiff states are not involved, *see id.* at 6 n.2, despite the fact that there has been absolutely no showing or finding that it is necessary to remedy any injury to Plaintiffs.  In effect, the Court has ruled that Defendants are collaterally estopped from raising the same arguments in other federal courts that they raised in this case.  But the Supreme Court has expressly rejected that outcome.  In *Mendoza*, the Court held that nonmutual collateral estoppel does not apply against the government, meaning that the government can litigate the same legal issue against multiple parties in multiple fora (even if it loses in one forum) before the Supreme Court considers the issue.  *See Mendoza*, 464 U.S. at 162 ("[W]e now hold that [the federal government] is not further bound in a case involving a litigant who was *not a party to the earlier litigation*.") (emphasis added).  In addition to being in conflict with Supreme Court precedent, the Preliminary Injunction also deprives other federal courts of the authority to

---

[4] The Fourth Circuit's decision in *Gloucester* remains good law in the Fourth Circuit despite the Supreme Court's stay.  *See Carcaño*, 2016 WL 4508192, at *13 ("[D]espite the stay and recall of the mandate, the Supreme Court did not vacate or reverse the Fourth Circuit's decision. Thus, . . . at present [*Gloucester*] remains the law in this circuit."); *Highland Bd. of Ed. v. U.S. Dep't of Ed.*, 2016 WL 5372349, at *18 (S.D. Ohio Sept. 26, 2016) (explaining reliance on *Gloucester* despite the Supreme Court's stay).  Nor does the Supreme Court's grant of the writ of certiorari change the fact that it is inappropriate for this Court to prevent other federal courts from receiving the benefit of the government's views in cases where Plaintiffs are not parties.

manage their dockets and to receive a full and fair adversarial presentation of the complex and novel issues raised in this case, in violation of principles of comity.

Finally, and relatedly, the Preliminary Injunction appears to prevent the government from enforcing its understanding of the law even in jurisdictions where other federal courts have agreed with the government's interpretation of the law.  Indeed, the majority of courts to have considered some or all of the issues raised in this case have sided with Defendants.  *See Gloucester*, 822 F.3d at 720; Report & Recommendation, *Students & Parents for Privacy v. U.S. Dep't of Educ.*, No. 16-cv-4945, ECF No. 134 (N.D. Ill. Oct. 18, 2016); *Highland Bd. of Ed. v. U.S. Dep't of Educ.*, --- F. Supp. 3d ---, 2016 WL 5372349, at *11 (S.D. Ohio Sept. 26, 2016); Decision and Order Granting in Part Motion for Preliminary Injunction, *Whitaker v. Kenosha Unified Sch. Dist. No. 1*, No. 16-cv-943, ECF No. 10 (E.D. Wisc. Sept. 22, 2016); *Carcaño v. McCrory*, --- F. Supp. 3d ---, 2016 WL 4508192, at *11-16 (M.D.N.C. Aug. 26, 2016).  Nonetheless, the Preliminary Injunction elevates this Court above its sister federal courts and disregards their contrary rulings, thereby preventing the government from enforcing its interpretation of the law or asserting its legal position even in jurisdictions where that precise legal position has been upheld by a federal court. Such an injunction is simply improper.  *See, e.g.*, *Georgia-Pac. Consumer Prod. LP v. von Drehle Corp.*, 781 F.3d 710, 716 (4th Cir. 2015) (holding that district court "abused its discretion in extending [its] injunction" to circuits that had already ruled against the plaintiff on the same issue, and calling such extension "a direct and unseemly affront to those courts"); *United States v. AMC Entm't, Inc.*, 549 F.3d 760, 770-74 (9th Cir. 2008) (similar).  At a minimum, Defendants' appeal presents a "substantial case" on this question and those discussed above, thus warranting a stay of the Preliminary Injunction's application beyond Plaintiffs and their educational subdivisions pending appeal.

## II.   DEFENDANTS AND THE PUBLIC WILL BE IRREPARABLY HARMED ABSENT A PARTIAL STAY

The overbroad scope of the Preliminary Injunction is causing real and irreparable harm to Defendants, to the public, and to specific transgender individuals.  When a federal government agency is seeking a stay, the irreparable-harm and public-interest factors "merge."  *Nken v. Holder*, 556 U.S. 418, 435 (2009).  In this case, those factors strongly militate in favor of a stay.

The Preliminary Injunction is currently preventing Defendants from carrying out their core statutory missions in the 37 states that are not plaintiffs to this lawsuit.  *See* 20 U.S.C. §§ 1681, 1682 (charging ED and DOJ with "effectuating the provisions" of Title IX); 42 U.S.C. §§ 2000e-5, 2000e-6 (charging EEOC and DOJ with enforcing Title VII).  As a result of the injunction, ED suspended investigations and monitoring of resolution agreements for 73 pending Title IX matters. *See* Lhamon Decl. ¶ 26.  Even after the Clarification Order, ED has continued to suspend the investigation and monitoring of 35 matters, 25 of them in non-plaintiff states.  *Id.* ¶ 27.  ED has also been unable to open new investigations related to access by transgender individuals to restrooms, locker rooms, and similar facilities, even though it continues to receive complaints alleging discrimination against transgender students; assist any of the complainants or their schools; or provide schools, state agencies, students, or parents with the technical assistance they have requested since the Preliminary Injunction took effect.  *Id.* ¶¶ 28-30.  Even fund recipients who "would be entirely willing to work with OCR to find ways to accommodate the needs of their transgender students consistent with federal law are unable to obtain OCR's assistance in doing so." *Id.* ¶ 29.  At the same time, all Defendants are unable to bring enforcement actions or make legal arguments in cases in which the "interest of the United States" is at stake.[5]  28 U.S.C. § 517.

---

[5] The Preliminary Injunction's impact on the Department of Labor, as well as the portions of the Guidelines that deal with topics like bullying and sexual violence, is still the subject of further briefing.  *See* Clarification Order, at 7 (ordering such briefing).

In general, "there is inherent harm to an agency" in preventing it from enforcing statutes and regulations that "Congress found it in the public interest to direct that [it] develop and enforce." *Cornish v. Dudas*, 540 F. Supp. 2d 61, 65 (D.D.C. 2008); *see Connection Distrib. Co. v. Reno*, 154 F.3d 281, 296 (6th Cir. 1998) ("[T]he granting of an injunction against the enforcement of a likely constitutional statute would harm the government."). The harm in this case is particularly acute because the Preliminary Injunction restricts Defendants' choice of legal arguments in cases "involving [] litigant[s] who [are] not a party to the earlier litigation." *Mendoza*, 464 U.S. at 162. This aspect harms the Department of Justice and the Attorney General by impeding her authority to "supervise all litigation to which the United States, an agency, or officer thereof is a party." 28 U.S.C. § 519; *see id.* §§ 516, 518.

The harm caused by the injunction's application to non-parties reaches across the federal judicial system. By limiting the set of arguments that can be presented to other courts, *see* ECF No. 86, 1, 6 (limiting acceptable arguments to "textual" ones), and by restricting Defendants' ability to file amicus briefs, *see id.* at 1-2, 7, the injunction is harming other federal courts of equal or superior rank, because it denies them an unencumbered adversarial presentation of competing legal arguments. *See Nat'l Mining Ass'n*, 309 F.3d at 815 (refusing to allow "one circuit's statutory interpretation to foreclose . . . review of the question in another circuit"); *Los Angeles Haven Hospice*, 638 F.3d at 664 ("[N]ationwide injunctive relief may be inappropriate where a regulatory challenge involves important or difficult questions of law, which might benefit from development in different factual contexts and in multiple decisions by the various courts of appeals."). The non-party scope of the injunction equally threatens harm to the Supreme Court itself, by denying it the precise benefits it sought to preserve in *Mendoza*. *See* 464 U.S. at 160 (refusing to "thwart the development of important questions of law by freezing the first final decision rendered on a

particular legal issue"); *id.* (refusing to "deprive this Court of the benefit it receives from permitting several courts of appeals to explore a difficult question before this Court grants certiorari"); *id.* at 163 (seeking to "allow thorough development of legal doctrine by allowing litigation in multiple forums"); *id.* at 164 (avoiding "the problem of freezing the development of the law because the Government is still free to litigate [an] issue in the future with some other party").  The injunction's application beyond the parties is thus inflicting a deep and unnecessary harm on the judiciary's ability to consider and resolve complex and important legal issues.  A partial stay of the Preliminary Injunction's scope is therefore in the public interest.

The Preliminary Injunction is also causing irreparable harm to a number of specific transgender individuals, who now lack federally enforced protections against certain forms of discrimination at work and at school.  *See* Lhamon Decl. ¶¶ 31-33 (describing "significant dignitary, psychological, medical, and other harms"); *id.* ¶¶ 13-14, 19, 22.  As mentioned above, numerous investigations and enforcement actions outside the plaintiff states are now on hold, and others cannot commence because of the Preliminary Injunction's application to non-plaintiffs.  "[T]he overriding public interest [lies] in the firm enforcement of Title IX."  *Cohen v. Brown Univ.*, 991 F.2d 888, 906 (1st Cir. 1993).  Upholding the "right to be free from discrimination on the basis of sex . . . is plainly in the public interest."  *Gloucester*, 822 F.3d at 729 (Davis, J., concurring).  Because of the Preliminary Injunction's overbroad scope, transgender students and school employees in non-plaintiff states cannot claim these protections from the federal government.  Absent a stay, these students and employees—whose cases have nothing to do with Plaintiffs in this case—will continue to be irreparably harmed.  *See, e.g.*, *Highland*, 2016 WL 5372349, at *2-

20

*3, *14, *19 (describing harm to transgender student if not permitted to use restroom consistent with her gender identity); *Carcaño*, 2016 WL 4508192, at *25 (same).[6]

## III.   PLAINTIFFS WILL NOT BE HARMED BY THE PARTIAL STAY REQUESTED BY DEFENDANTS

Against those substantial harms, the Court must balance any harm that Plaintiffs will suffer if the Preliminary Injunction's application to non-parties is stayed.  There is none.  Limiting injunctive relief to the parties that sought it will preserve Plaintiffs' abilities to continue the school policies they seek to preserve.  *See* Applic. for Prelim. Inj., ECF No. 11, at 21-22 (articulating the harms Plaintiffs seek to prevent).  An injunction limited to the parties would ensure that none faces even the purported threat of losing federal funding.  There is no reason that enjoining federal action as to non-plaintiffs is necessary to prevent any harm, much less irreparable harm, to Plaintiffs.

Strikingly, in the four briefs they have submitted thus far addressing the injunction's scope, Plaintiffs have not once even attempted to explain why relief that applies to non-plaintiffs (other than their educational subdivisions) is necessary to prevent their own irreparable injury.  *See* ECF No. 11, at 24-25 (arguing that successful facial challenges should automatically lead to injunctions that apply to *all* regulated parties, and asserting *other* sovereigns' alleged irreparable harm); ECF No. 52, at 13-15 (arguing that non-plaintiff states are "similarly situated"); ECF No. 73, at 9-10 & n.10 (no explanation at all); ECF No. 64 (same).  Plaintiffs' failure to explain their own need for such an injunction is not surprising.  There is simply no plausible reason why Plaintiffs are harmed when Defendants file a brief in a case to which Plaintiffs are not a party, or when Defendants undertake an investigation or enforcement action in a different state.  Non-party relief is reserved for those rare occasions when non-party remedies are actually necessary to ensure that the parties'

---

[6] The grant of certiorari in *Gloucester* in no way diminishes these irreparable harms, which will continue to accrue at least until *Gloucester* is decided, and potentially beyond if the Supreme Court does not reach a dispositive resolution of the issues in these preliminary injunction proceedings.

remedies are effective.  *See, e.g.*, *Califano*, 442 U.S. at 701-03 (upholding class-wide relief for a properly certified nationwide class); *Texas*, 787 F.3d at 769 (upholding nationwide relief because of immigration law's constitutional imperative of uniformity and "because DAPA beneficiaries would be free to move between states").[7]  This is not one of those cases.  Plaintiffs would suffer no harm if the Court granted a partial stay and limited the application of the Preliminary Injunction to Plaintiffs and their educational subdivisions only.

## CONCLUSION

Defendants respectfully request a partial stay of the Preliminary Injunction pending appeal. Given the exigencies, Defendants respectfully request expedited briefing and consideration of this motion, and are willing to forgo a reply brief in order to facilitate such expedition.  Absent a ruling by the close of business on November 18, 2016, Defendants may seek relief from the Fifth Circuit in order to protect their interests.

Dated: November 7, 2016                    Respectfully submitted,

                                           BENJAMIN C. MIZER
                                           Principal Deputy Assistant Attorney General

                                           JENNIFER D. RICKETTS
                                           Director, Federal Programs Branch

                                           SHEILA M. LIEBER
                                           Deputy Director, Federal Programs Branch

---

[7] Other cases the Court cited in its Clarification Order granted permanent injunctions to the U.S. Secretary of Labor extending to the employer's entire company.  *See Brennan v. J.M. Fields, Inc.*, 488 F.2d 443, 449-50 (5th Cir. 1973); *Hodgson v. First Fed. Sav. & Loan Ass'n*, 455 F.2d 818, 826 (5th Cir. 1972); *see also Wirtz v. Ocala Gas Co.*, 336 F.2d 236, 240 (5th Cir. 1964) (consent decree).  These cases did not involve preliminary injunctions at all, and therefore did not even address irreparable harm. Wright & Miller, Fed. Practice & Proc., § 2944 ("[I]rreparable injury is not an independent requirement for obtaining a permanent injunction.").  They also explicitly found that the relief ordered was necessary to vindicate the Secretary's interests. Because the Secretary had a continuing responsibility to ensure compliance with federal law, in the absence of a company-wide injunction, the Secretary would onerously "have to maintain its surveillance over defendant in order to insure that violations of the Act in job categories other than [the job category at issue] did not occur." *Hodgson*, 455 F.2d at 826.  The company-wide injunction directly benefited the Secretary of Labor by "shift[ing] the responsibility for compliance onto the employer's shoulders" and thus promoting the "economy of the [Secretary's] administrative effort." *Brennan*, 488 F.2d at 449 (quoting *Goldberg v. Cockrell*, 303 F.2d 811, 814 (5th Cir. 1962)).  By contrast, Plaintiffs here experience no injury (and will reap no benefit) based on Defendants' conduct toward others.

*/s/ Benjamin L. Berwick*
BENJAMIN L. BERWICK (MA Bar No. 679207)
SPENCER AMDUR (PA Bar No. 322007)
JAMES BICKFORD (NY Bar No. 5163498)
Trial Attorneys, U.S. Department of Justice
Civil Division, Federal Programs Branch
1 Courthouse Way, Suite 9200
Boston, MA 02210
Telephone: (617) 748-3129
Facsimile: (617) 748-3965
Email: Benjamin.L.Berwick@usdoj.gov

*Counsel for Defendants*

23

## CERTIFICATE OF CONFERENCE

I hereby certify that on November 4, 2016, the undersigned counsel consulted with counsel for Plaintiffs, Austin R. Nimocks, who represented that Plaintiffs do not oppose the proposed expedited briefing schedule for this motion.

*/s/ Benjamin L. Berwick*
Benjamin L. Berwick


## CERTIFICATE OF SERVICE

I hereby certify that on November 7, 2016, a copy of the foregoing Motion to Stay in Part, Pending Appeal, the Court's Preliminary Injunction Order and the Court's Further Order of October 18, 2016, and Unopposed Request for Expedited Consideration was filed electronically via the Court's ECF system, which effects service upon counsel of record.

*/s/ Benjamin L. Berwick*
Benjamin L. Berwick