IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| STATE OF TEXAS, ET AL., | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 7:16-CV-00054-O |
| | § | |
| UNITED STATES OF AMERICA, ET AL., | § | |
| | § | |
| *Defendants.* | § | |

---

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO STAY IN PART, PENDING APPEAL, THE COURT'S PRELIMINARY INJUNCTION ORDER AND THE COURT'S FURTHER ORDER OF OCTOBER 18, 2016**

---

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................ 1

ARGUMENT .................................................................................................................. 2

I.    A Nationwide Injunction Is Appropriate Because the States' Facial
      Challenge Requires Vacating the Rule in Its Entirety. .................................. 2

A.    Case Law Supports the Nationwide Scope of the Injunction.......................... 3

B.    The Rationale for Narrowing the Injunction Is Inapposite. ........................... 4

II.   A Nationwide Injunction Does Not Cause Irreparable Harm. ....................... 6

A.    The Injunction Does Not Irreparably Harm Defendants................................ 6

B.    The Injunction Does Not Irreparably Harm Non-Plaintiffs. .......................... 8

C.    The Preliminary Injunction Does Not Harm Individuals. .............................. 9

CONCLUSION .............................................................................................................. 10

CERTIFICATE OF SERVICE ........................................................................................... 11

## INTRODUCTION

Now that the Court has reaffirmed a nationwide injunction against them, Defendants try a new tack to avoid the consequences of their lawlessness. Defendants denounce the Court's "sweeping" preliminary injunction as "deeply troubling" and an "unwanted intervention" with "no basis" in law. ECF No. 95 at 1–2, 15.

These are all apt descriptions, of course, but of *Defendants'* conduct. Via their collective and systematic efforts, Defendants sought to exercise control over all intimate spaces, and the expectations of privacy of all Americans, nationwide. They skirted the required procedure for administrative actions that establish a "binding norm" and are therefore "compulsory in nature." ECF No. 58 at 26. And they disregarded the unambiguous protection under federal law for intimate spaces. *Id*. at 31–33; ECF No. 90 at 1–17.

In the wake of the Court's finding that the "Guidelines are, in practice, legislative rules," ECF No. 58 at 27, Defendants finally abandon their argument that their new rule is purely advisory and without legal consequence. They concede what was obvious all along—that the new rule is binding in all cases. But they plead for an exception so that their "guidances" may live, notwithstanding the Court's clear determination about their legality.

While Defendants now recognize the obligatory nature of their intimate-spaces rule, they still fail to perceive that their unauthorized rewriting of federal law justifies the scope of the injunction. Defendants carefully crafted their rule to bring an end to sex-designated intimate areas. EEOC made its proclamation, *Lusardi v. McHugh*, EEOC Decision No. 0120133395, 2015 WL 1607756, at *1 (Apr. 1, 2015), while DOL and OSHA declared that employees have the right to access the intimate spaces of their choosing. ECF No. 11 at 27–28 (citing ECF No. 6-4), ECF No. 52 at 11, 14. And once Defendants utilized their "guidances" to convince a circuit court to adopt

their revision of Title IX, *G.G. ex rel. Grimm v. Gloucester Cty. Sch. Bd.*, 822 F.3d 709 (4th Cir.), *recalling mandate & issuing stay*, 136 S. Ct. 2442 (2016), *cert. granted*, 2016 WL 4565643 (U.S. Oct. 28, 2016) (No. 16-273), they took the next step and put *all* fifty States on notice that their new rule was in effect. DOJ sued North Carolina for upholding the right to sex-designated intimate spaces, *United States v. North Carolina,* No. 1:16-cv-425 (M.D.N.C.) (filed May 9, 2016), and then issued a Joint Letter with DOE (ECF No. 6-10), broadly announcing their new view of the law.

Because Defendants' new rule is as uniform as it is ubiquitous, they cannot argue that this challenge involves a question "which might benefit from development in different factual contexts and in multiple decisions by the various courts of appeals." ECF No. 95 at 19 (quoting *Los Angeles Haven Hospice, Inc. v. Sebelius*, 638 F.3d 644, 664 (9th Cir. 2011)). Because no set of facts or circumstances could possibly yield a different result under Defendants' new rule, the Court appropriately saw the rule for what it is—an unlawful usurpation of the legitimate authority of *every* State to make decisions for itself. 34 C.F.R. § 106.33; ECF No. 11 at 21–22 nn. 8–21; ECF No. 58 at 10 n.8. And since Defendants cannot identify any irreparable harm resulting from the injunction, the stay motion should be denied.

ARGUMENT

## I.   A Nationwide Injunction Is Appropriate Because the States' Facial Challenge Requires Vacating the Rule in Its Entirety.

Defendants' unilateral reinterpretation of Title VII, Title IX, and the OSH Act violates the Administrative Procedure Act (APA) because Defendants failed to follow the required procedure for notice and comment, and because Defendants' reinterpretation is inconsistent with the unambiguous intent of Congress. *See* ECF No. 58 at 26–27, 31–33. Defendants' actions are, therefore, illegal on their face, and no application of their reinterpretation is permissible. The facial defects in Defendants' publications warrant broad injunctive relief.

### A.  Case Law Supports the Nationwide Scope of the Injunction.

The "scope of injunctive relief is dictated by the extent of the violation established, not by the geographical extent of the plaintiff class." *Califano v. Yamazaki,* 442 U.S. 682, 702 (1979). Thus, the facial invalidity of Defendants' actions justifies nationwide relief, regardless of the geographical extent of these Plaintiffs.

In cases involving illegal agency action, courts do not hesitate to eliminate such action on a nationwide basis where it is facially invalid. "Government-wide injunctive relief for plaintiffs and all individuals similarly situated can be entirely appropriate and is 'well-supported by precedent, as courts frequently enjoin enforcement of regulations ultimately held to be invalid.'" *Doe v. Rumsfeld*, 341 F. Supp. 2d 1, 17–18 (D.D.C. 2004) (quoting *Sanjour v. EPA*, 7 F. Supp. 2d 14, 17 (D.D.C. 1998)). There is no simply basis for allowing illegal agency action to continue where it is invalid on its face. *See Am. Lands Alliance v. Norton*, 2004 WL 3246687, *3 (D.D.C. June 2, 2004) (determining that a nationwide injunction against a facially invalid regulation "is called for because the declaratory judgment alone is inadequate where a policy is found to be facially invalid. . .[and] avoids future redundant and duplicative litigation."). And there is no requirement that an injunction affect only the parties in the suit. "Where, as here, an injunction is warranted by a finding of defendants' outrageous unlawful practices, the injunction is not prohibited merely because it confers benefits upon individuals who were not named plaintiffs or members of a formally certified class." *Doe*, 341 F. Supp. 2d at 17 (quoting *McCargo v. Vaughn,* 778 F. Supp. 1341, 1342 (E.D. Pa. 1991)).

The Supreme Court has indirectly affirmed this principle as well. In *Lujan v. National Wildlife Federation*, 497 U.S. 871 (1990), Justice Blackmun noted:

> The Administrative Procedure Act permits suit to be brought by any person "adversely affected or aggrieved by agency action." In some cases the "agency action" will consist of a rule of broad applicability; and if the plaintiff prevails, the result is that the rule is invalidated, not simply

that the court forbids its application to a particular individual. Under these circumstances a single plaintiff, so long as he is injured by the rule, may obtain "programmatic" relief that affects the rights of parties not before the court. On the other hand, if a generally lawful policy is applied in an illegal manner on a particular occasion, one who is injured is not thereby entitled to challenge other applications of the rule.

*Id.* at 913 (Blackmun, J., dissenting) (citation omitted). Although Justice Blackmun wrote in dissent for himself and three other Justices, the majority did not challenge the dissenters on that point. To the contrary, the majority agreed that under the APA, a successful challenge by an aggrieved individual can affect the entire agency program. *Id.* at 890 n.2; *see also Doe*, 341 F. Supp. 2d at 17 (noting that the Supreme Court has "implicitly agreed" with the proposition that an injunction can benefit parties other than the parties to the litigation).

## B. The Rationale for Narrowing the Injunction Is Inapposite.

*United States v. Mendoza*, 464 U.S. 154 (1984), is inapposite. Though a case only about collateral estoppel, Defendants seek to extrapolate *Mendoza* beyond its logical, and textual, reach. Whether a party may raise the affirmative defense of collateral estoppel (or claim preclusion) in a separate lawsuit has nothing to do with the proper scope of this Court's injunctive power to remedy the facial violation challenged here. Moreover, collateral estoppel cannot apply absent a final judgment, *see Baker by Thomas v. Gen. Motors Corp.*, 522 U.S. 222, 233 (1998), something nonexistent in this case. Thus, *Mendoza* does not apply.[1]

---

[1] Nor does *Hernandez v. Reno*, 91 F.3d 776 (5th Cir. 1996), also cited by Defendants. While the Fifth Circuit narrowed an injunction in *Hernandez*, it is easily distinguishable from the circumstances presented here. In *Hernandez*, an individual challenged a longstanding INS rule requiring aliens with Family Unity status to apply separately for a work permit. 91 F.3d at 780. The district court found that the agency action violated the APA and enjoined INS from requiring *any* alien with Family Unity status to apply separately for a work permit. The Fifth Circuit held that it was not necessary to enter a broad injunction to remedy the wrong suffered by the plaintiff. *Id.* at 780–81. But *Hernandez* not only involved an agency rule that had already been in place for years and, presumably, applied thousands of times, but the case itself turned on the specific factual circumstances of Hernandez himself—whether he was "the spouse or unmarried child of a legalized alien on May 5, 1988." *Id.* at 781. Thus, different claims could meet with different results depending on their particular status on a particular date. Under these circumstances, the Fifth Circuit concluded that "[t]he breadth of the injunction issued by the trial judge in this case, however, is not necessary to remedy the wrong suffered

Moreover, the Court has already gone to great effort to exempt from the scope of its injunction myriad pending cases where Defendants developed arguments regarding its guidances and their prospective legal force. And whether Defendants can make arguments for deference based on their facially invalid guidances in every legal fora may be largely irrelevant in light of the Supreme Court's grant of certiorari in *Gloucester Cty.* , *supra.* Defendants' arguments thus are unpersuasive.[2]

Here, the status quo is properly considered the longstanding interpretation and understanding of Title VII, Title IX, and the OSH Act, all of which permit sex-designated intimate facilities. The Defendants' new rule is just that—new. And as has been demonstrated, this novel rule runs counter not only to the relevant underlying statutes and regulations, but also the longstanding principles of privacy, dignity, and safety surrounding intimate areas—something Defendants do not even attempt to address in their new rule. Preserving the status quo on a nationwide basis, in light of a novel and facially illegal rule, is precisely what the Court should do—particularly in these circumstances, where the Supreme Court has granted certiorari,

---

by Hernandez." *Id.* Other Fifth Circuit cases upholding nationwide injunctions, ECF No. 86 at 3–4 (citing cases), did not involve longstanding rules, or turn on individual facts.

[2] The authorities raised by Defendants do not involve facially invalid agency actions that apply on a nationwide scale in myriad unprecedented contexts, and none of them involve sovereigns, rather than individuals or singular corporations, as plaintiffs. *See U.S. Dep't of Defense v. Meinhold*, 114 S. Ct. 374 (1993) (constitutional challenge to the military's "Don't Ask, Don't Tell" policy); *Lewis v. Casey*, 518 U.S. 343, 357 (1996) (First, Sixth, and Fourteenth Amendment challenges by class of inmates alleging deprivation of the right to access courts and counsel by the Arizona Department of Corrections); *Lion Health Servs. v. Sebelius*, 635 F.3d 693 (5th Cir. 2011) (limiting injunction requiring specific reimbursement to plaintiff for multiple years under an invalid agency rule and instead remanding to the agency so the proper amount of reimbursement could be determined); *Hollon v. Mathis Indep. Sch. Dist.*, 491 F.2d 92, 93 (5th Cir. 1974) (per curiam) (constitutional challenge to school district policy prohibiting married students from participating in high school athletics); *Meyer v. CUNA Mut. Ins. Soc'y*, 648 F.3d 154, 170 (3d Cir. 2011) (holding that district court abused its discretion in issuing an injunction retaining jurisdiction over the class members' claims for breach of contract against an insurance company throughout the claims procedure process after the class was decertified); *Sharpe v. Cureton*, 319 F.3d 259, 273 (6th Cir. 2003) (First Amendment retaliation claims specific to plaintiffs); *Va. Soc'y for Human Life, Inc. v. FEC*, 263 F.3d 379, 393–94 (4th Cir. 2001) *overruled on other grounds*, *The Real Truth About Abortion, Inc. v. FEC*, 681 F.3d 544 (4th Cir. 2012) (constitutional challenge to FEC regulation); *cf. Los Angeles Haven Hospice, Inc. v. Sebelius*, 638 F. 3d 644, 664–65 (9th Cir. 2011) (declining to enter nationwide injunction against invalid agency rule regarding hospice reimbursement where numerous other hospice providers had already brought suit in multiple jurisdictions).

stayed the court of appeals' mandate upholding Defendants' guidelines, and will presumably resolve the legal issues in this case and the other pending cases challenging the guidelines.

## II. A Nationwide Injunction Does Not Cause Irreparable Harm.

The preliminary injunction does not harm Defendants' ability to enforce the laws enacted by Congress. Nor does it injure anyone seeking access to intimate areas. Rather, Defendants' argument about irreparable harm is merely a veiled disagreement with the Court on the merits. Defendants' inability to enforce their view of the law, however, is not a proper standard for irreparable injury. For if it were, the Defendants would always be able to establish irreparable injury by merely having a different point of view. Rather, as the Court found, the irreparable harm of Defendants' new rule is upon the States whose power to protect privacy within intimate areas, or not, is divested by Defendants' new rule.

### A. The Injunction Does Not Irreparably Harm Defendants.

Defendants maintain that the nationwide injunction prevents them from "carrying out their core statutory mission in the 37 states that are not parties to this lawsuit." ECF No. 95 at 24. Yet as the Court already made clear, the injunction does not prevent Defendants from enforcing federal civil rights laws, nor does it "affect a school's obligation to investigate and remedy student complaints of sexual harassment, sex stereotyping, and bullying." ECF No. 86 at 5. Rather, it prohibits Defendants from opening intimate areas in educational institutions and workplaces to members of both sexes, in violation of existing federal regulations that permit the separation of the sexes in intimate areas and, more importantly, leaves these policy decisions to the state and local governments. *Id.*

This affirms the scope of the Court's action because the APA requires the Court to "set aside" unlawful agency action such as Defendants' rule on intimate areas. 5

U.S.C. § 706(2)(A)–(F); ECF No. 6; *Citizens to Pres. Overton Park, Inc. v. Volpe,* 401 U.S. 402, 413–14 ("In all cases agency action must be set aside if the action was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law or if the action failed to meet statutory, procedural, or constitutional requirements.") (internal quotation marks omitted). Where, as here, the Court "determines that agency regulations are unlawful, the ordinary result is that the rules are vacated— *not that their application to the individual petitioners is proscribed.*" *Harmon v. Thornburgh*, 878 F.2d 484, 495 (D.C. Cir. 1989) (emphasis added).

Nor does the Court's injunction hamstring Defendants' ability to present proper legal arguments in courts. ECF No. 95 at 25. A host of legal norms already limit attorney advocacy. Clients, and not their attorneys, establish the "objectives of legal representation" and decide "whether to settle a matter." MODEL RULES OF PROF'L CONDUCT R. 1.2 (1983); *see also Missouri v. Frye,* 132 S. Ct. 1399 (2012) (holding that defense counsel has the duty to communicate formal plea offers that may be favorable to the accused). In civil cases, attorneys may be sanctioned for making frivolous arguments. Fed. R. Civ. P. 11. And attorneys representing federal agencies are bound by the laws of Congress, *Chevron U.S.A. v. Nat. Res. Def. Council*, 467 U.S. 837, 842– 43 (1984) ("If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress"), and existing federal regulations, *Shell Offshore Inc. v. Babbitt*, 238 F.3d 622 (5th Cir. 2001) (requiring formal rulemaking where agencies seek to depart significantly from established practice); *Homemakers North Shore, Inc. v. Bowen,* 832 F.2d 408, 412 (7th Cir. 1987) ("When an agency gets out the Dictionary of Newspeak and pronounces that for purposes of its regulation war is peace, it has made a substantive change for which the APA may require procedures.").

Here, the Court's injunction merely buoys these preexisting limitations and,

appropriately, prevents Defendants "from *using the Guidelines* to argue that the definition of 'sex' as it relates to intimate facilities includes gender identity." ECF No. 86 at 5 (emphasis added). In other words, Defendants must work within the words of Congress, and not argue for deference based on their own facially invalid action. Since the rule that is contained in Defendants' various guidances is unlawful for the reasons that the Court stated, ECF No. 58 at 26–27, 31–33, the so-called "burden" imposed on Defendants is not the work of the Court's injunction, but "the APA's command that rules 'found to be . . . in excess of statutory jurisdiction' shall be . . . 'set aside.'" *Nat'l Min. Ass'n v. U.S. Army Corps of Eng'gs*, 145 F.3d 1399, 1410 (D.C. Cir. 1998). Indeed, operating within the law cannot be a burden by definition. Thus, there is no irreparable harm to Defendants.

Defendants also complain that the broad scope of the injunction threatens to "prevent other district courts and courts of appeals from weighing in on the legal issues presented in this case, thereby 'substantially thwart[ing] the development of important questions of law . . . .'" ECF No. 95 at 13 (quoting *Mendoza*, 464 U.S. at 160). They further posit that this could "'squelch the circuit disagreements that can lead to Supreme Court review.'" *Id.* at 14 (quoting *Holland v. Nat'l Mining Ass'n*, 309 F.3d 808, 815 (D.C. Cir. 2002)). But those concerns are uniquely misplaced in this case, in which the Supreme Court has already decided to review the legality of Defendants' reliance on the same guidelines at issue in this case and in other pending cases. In short, the argument that the scope of the injunction needs to be narrowed to allow a circuit split to develop is unavailing when the Supreme Court has already agreed to consider the issue.

## B. The Injunction Does Not Irreparably Harm Non-Plaintiffs.

Defendants' argument that the injunction harms non-Plaintiffs also fails. Various states and localities have policies that mirror Defendants' rule, and these

policies are unaffected by the injunction. This is because the injunction is based on existing law, which delegates decision-making to non-federal authorities. ECF No. 58 at 26–27, 31–33; 34 C.F.R. § 106.33.

Inexplicably, Defendants cast the freedom provided to States, under the applicable laws, as a burden. Because of the injunction, they argue, "non-plaintiff states must expend resources to enact (if they have not done so already) and enforce their own laws" with respect to intimate areas. ECF No. 95 at 16. This argument assumes that democratic deliberation within non-federal sovereigns simply requires too much work on the part of the citizenry and their elected officials. But not only do States lack the ability to cede to the federal government more power than the Constitution provides, Defendants' argument erroneously presumes that the States want to relinquish their power and turn full control over intimate areas to the federal government. No state has made that argument. And while some states have indicated agreement with the policy choice behind Defendants' new rule, there exists no basis for Defendants to conclude that the law requires non-federal laboratories of democracy to be shuttered and replaced with the federal executive.

## C. The Preliminary Injunction Does Not Harm Individuals.

Finally, Defendants' claim that the injunction harms individuals is unpersuasive. Neither Defendants' new rule, nor the substance of the injunction, turns on whether one identifies themselves as "transgender." As the Court recognized, the underlying laws and regulations at issue are unambiguous *biological* categories. ECF No. 58 at 31. Therefore, as to any dispute or question regarding intimate areas, any application of "sex" by *Defendants* that runs contrary to the biologically-grounded nature of the term is enjoined. While the injunction properly restrains the Defendants, it does not reach and therefore burden private parties. *See*, *e.g.*, *Thompson v. Freeman*, 648 F.2d 1144, 1147 (8th Cir. 1981) (explaining that

injunctive relief does not extend to non-parties that are not in privity or controlled by those enjoined).

Conclusion

For the reasons herein stated, Defendants' Motion should be denied.

Respectfully submitted this the 15th day of November, 2016,

| | |
|---|---|
| LUTHER STRANGE<br>Attorney General of Alabama | KEN PAXTON<br>Attorney General of Texas |
| BRAD D. SCHIMEL<br>Attorney General of Wisconsin | JEFFREY C. MATEER<br>First Assistant Attorney General |
| PATRICK MORRISEY<br>Attorney General of West Virginia | BRANTLEY D. STARR<br>Deputy First Assistant Attorney General |
| HERBERT SLATERY, III<br>Attorney General of Tennessee | PRERAK SHAH<br>Senior Counsel to the Attorney General |
| MARK BRNOVICH<br>Attorney General of Arizona | ANDREW D. LEONIE<br>Associate Deputy Attorney General |
| SCOTT PRUITT<br>Attorney General of Oklahoma | */s/ Austin R. Nimocks*<br>AUSTIN R. NIMOCKS<br>Associate Deputy Attorney General<br>Texas Bar No. 24002695<br>austin.nimocks@oag.texas.gov |
| JEFF LANDRY<br>Attorney General of Louisiana | |
| SEAN REYES<br>Attorney General of Utah | MICHAEL C. TOTH<br>Senior Counsel |
| SAM OLENS<br>Attorney General of Georgia | JOEL STONEDALE<br>Counsel |
| | Office of Special Litigation<br>ATTORNEY GENERAL OF TEXAS<br>P.O. Box 12548, Mail Code 009<br>Austin, Texas 78711-2548<br>Tel: 512-936-1414 |
| | *Attorneys for Plaintiffs* |

## CERTIFICATE OF SERVICE

I, Austin R. Nimocks, hereby certify that on this the 15th day of November, 2016, a true and correct copy of the foregoing document was transmitted via using the CM/ECF system, which automatically sends notice and a copy of the filing to all counsel of record.

*/s/ Austin R. Nimocks*
Austin R. Nimocks